**SISTERS OF CHARITY OF THE INCARNATE WORD, HOUSTON, TEXAS d/b/a St. Joseph Hospital, Appellant,**

v.

**Detra Massey GOBERT, Appellee.**

No. 01–96–00217–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 26, 1997.

---

**3.** Incidentally, the door to 2506 Arlington faced south.

Nancy J. Locke, Cyndi M. Jewell, Houston, for Appellant.

Thomas Clarke, Houston, for Appellee.

Before WILSON, COHEN and HEDGES, JJ.

## OPINION

WILSON, Justice.

Sisters of Charity of the Incarnate Word, Houston, Texas d/b/a St. Joseph Hospital (St. Joseph) appeals a jury finding that it was negligent in its care and treatment of Detra Massey Gobert. We affirm.

Gobert was admitted to St. Joseph's inpatient mental health unit for the purpose of receiving treatment for depression. The underlying lawsuit is based upon Gobert's claim that, while she was a patient of St. Joseph's, another patient, Jesse Ray Donatto, entered her room and sexually assaulted her. Gobert filed suit against St. Joseph on the grounds of negligence, gross negligence, and premises liability. At the close of Gobert's case-in-chief, the trial court granted St. Joseph a directed verdict on her premises liability claim. The jury then found St. Joseph negligent. In two points of error, St. Joseph challenges both the legal and factual sufficiency of the evidence supporting the entry of judgment on Gobert's negligence claim. Gobert files one cross-point on her premises liability claim. We affirm.

When "no evidence" and "factual sufficiency" points of error are raised on appeal, we address the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Neese v. Dietz,* 845 S.W.2d 311, 313 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In reviewing "no evidence" or legal insufficiency points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242

(Tex.1988); *Neese*, 845 S.W.2d at 312. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman*, 760 S.W.2d at 242; *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex.App.— Houston [1st Dist.] 1993, writ denied); *Neese*, 845 S.W.2d at 312.

■ In reviewing a factual sufficiency point, we consider and weigh all of the evidence, and we will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hollander*, 853 S.W.2d at 726. We will not substitute our opinion for that of the trier of fact. *Hollander*, 853 S.W.2d at 726.

## DISCUSSION

■ In point of error one, St. Joseph asserts there is no evidence, or alternatively, factually insufficient evidence that it breached the applicable standard of care because no qualified expert testified that its conduct fell below the applicable standard of care. St. Joseph asserts the jury must be guided solely by the testimony of a qualified expert witness in a medical malpractice lawsuit. But this is not a medical malpractice case where the jury would be instructed about the appropriate standard of care for mental patients generally. St. Joseph had a duty to provide for the care and protection of its patients, and to exercise reasonable care to safeguard its patients from any known or reasonably known danger. *Hilzendager v. Methodist Hosp.*, 596 S.W.2d 284, 286 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ); *Harris v. Harris Cnty. Hosp. Dist.*, 557 S.W.2d 353, 355 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). Therefore, this is a case of simple negligence, and the standard of care is that of ordinary care. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 349 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.) (applying a reasonable care standard in determining whether Golden Villa was negligent in leaving a patient unsupervised); *Borrillo v. Beekman Downtown Hosp.*, 146 A.D.2d 734, 537 N.Y.S.2d 219, 220 (N.Y.App.Div.1989) (trial court properly determined that the action was one of ordinary negligence rather than malpractice in case where plaintiff was assaulted by another patient); *Shackleford v. State*, 534 So.2d 38, 41 (La.Ct.App.1988) (state school liable for failure to exercise ordinary care resulting in injuries to resident due to poor supervision).

■ "Negligence" is the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. *Thompson v. Gibson*, 156 Tex. 593, 298 S.W.2d 97, 105 (1957). To establish liability based on negligence, a plaintiff must prove the defendant did something an ordinarily prudent person exercising ordinary care would not have done under the same circumstances, or, that the defendant failed to do that which an ordinarily prudent person in the exercise of ordinary care would have done. *Gannett Outdoor Co. v. Kubeczka*, 710 S.W.2d 79, 86 (Tex. App.—Houston [14th Dist.] 1986, no writ).

■ The evidence is both legally and factually sufficient to establish that St. Joseph breached the standard of ordinary care. Donatto was well known to the staff of St. Joseph. He had been admitted to St. Joseph on three or four times occasions, and the staff was aware of specific previous problems with him. He had difficulty with authority, tested the rules, responded negatively to direction, and needed firm limits. Just before the assault on Gobert, Donatto again was admitted to St. Joseph for the treatment of several problems: cocaine abuse, alcohol abuse, and depression. Based upon a review of his hospital records, one of St. Joseph's experts, Dr. Claghorn, characterized Donatto as a "difficult person," a "problem patient,"

and a "tough guy to deal with." Claghorn testified that he thought "it was fairly obvious this was a difficult man. Everyone knew that. Everyone saw it as obviously a gamble [for Donatto] to try to help this man get his life together."

Gloria Carmen, a St. Joseph mental health technician, testified that Donatto was attentive and flirtatious with female patients, with occasional sexual innuendo. She often observed Donatto staring at female patients, and making comments such as "um, I like that" or other similar remarks. Before the assault, the hospital knew that Donatto entered Gobert's room without permission on several occasions, despite hospital rules to the contrary, and that Gobert felt Donatto was being overly friendly. Gobert voiced her complaints because she was concerned about Donatto being in her room when she would leave, and his walking into her room without knocking. Gobert complained to the staff several times about Donatto's unwanted attentions, and that he made her feel uncomfortable and afraid. The staff assured Gobert the rooms were monitored, they would watch any activity, and that nothing would happen to her.

Carmen testified Donatto treated Gobert differently from the other female patients in that, whenever Gobert passed by, he would stare at her and make comments such as "um, I sure do like that." Carmen confirmed Gobert had voiced her concerns about Donatto on more than one occasion, telling Carmen she felt uncomfortable and unsafe around him. She also recalled Gobert complained about Donatto entering her room.

Another St. Joseph expert testified that if Gobert complained about Donatto entering her room and frightening her, that was the type of situation the hospital should have investigated further. No notations regarding Gobert's complaints about Donatto were noted in either of their charts. Claghorn agreed it would be a breach of the standard of care if the hospital chose to do nothing despite Gobert's complaints that Donatto had been in her room, was making advances on her, frightening her and making her feel uneasy, and he would not leave her alone.

St. Joseph's mental health unit is configured in the shape of the letter "V," with a nursing station located at the joint of the letter. Male and female patients room on the unit together, but on separate hallways. There is no obstruction to the view of the hallways from the nursing station. Gobert's room was close to the nursing station, and Donatto's room was on the other side, away from the female rooms. Donatto had to pass in front of the nursing station to get to Gobert's room.

On the evening of the assault, after the time at which all patients should have been in their rooms, Gobert left her room, and went to the nursing station to ask for something to help her sleep. Donatto was also at the nursing station. Earlier that evening, Donatto had attended a football game on a pass from his doctor. When he returned from the game, after lights-out, he smelled of alcohol. Gobert testified that Donatto was visible to the nurse who helped her with her sleeping medication. Gobert returned to her room and fell asleep.

Three individuals were working on the wing where Gobert and Donatto were patients. Henry Musoke, a mental health technician, testified he was on duty the night of the assault, and it was his duty to monitor the patients and their rooms at night. Musoke checked the patients' rooms prior to going on a lunch break, and, to his knowledge, Donatto was not in Gobert's room. Approximately one hour prior to the incident, Musoke took his lunch break, after first informing the nurse in charge. When Musoke returned from his break, and while he was in the process of again checking the patients' rooms, he found Donatto in Gobert's room. Donatto was bent over Gobert, having oral sex with her. Musoke asked Donatto to

leave Gobert's room, which he did without protest.

■ It is obvious St. Joseph knew generally about Donatto's problems obeying rules, and specifically about Gobert's fear of the man and her concern over his tendency to enter her room uninvited. A determination that St. Joseph breached the standard of care by its negligent failure to monitor the patients' rooms, and the comings and goings of patients into and out of each other's rooms is not one requiring special training, insight, or proof. The standard of nonmedical, administrative, ministerial, or routine care at a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard. *St. Paul Med. Center v. Cecil,* 842 S.W.2d 808, 812 (Tex.App.—Dallas 1992, no writ); *Golden Villa,* 674 S.W.2d at 349. The jury was entitled to conclude, without expert testimony, that St. Joseph's failure to prevent Donatto's unwanted intrusions into Gobert's room was not in keeping with the conduct of a person of ordinary prudence under like circumstances. *St. Paul Med. Center,* 842 S.W.2d at 813; *Golden Villa,* 674 S.W.2d at 349; *Davis v. Marshall,* 603 S.W.2d 359, 361 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Hilzendager,* 596 S.W.2d at 286.

We overrule St. Joseph's first point of error.

■ In its second point of error, St. Joseph argues expert testimony is required to prove the causal connection between its conduct and Gobert's injuries. However, because the jury was competent to determine whether St. Joseph's conduct fell below the standard of ordinary care, it was also competent to establish causation. St. Joseph also argues that Donatto's alleged criminal conduct superseded any negligence on its part. St. Joseph asserts that because Donatto's alleged criminal conduct superseded any negligence on its part, Gobert did not present legally or

factually sufficient evidence with respect to the cause-in-fact element of proximate cause. Alternatively, St. Joseph argues Gobert failed to articulate any facts to indicate that the intervening cause was foreseeable or should have been foreseeable.

■ The question of proximate cause generally involves a practical inquiry based on common experience applied to human conduct. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). The two elements of proximate cause are cause-in-fact and foreseeability. *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 549 (Tex.1985). Cause-in-fact means the negligent act or omission was a substantial factor in bringing about the injury, and without which no harm would have occurred. *Id.* Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Nixon,* 690 S.W.2d at 549–50. The danger of injury is foreseeable if its general character might reasonably have been anticipated. *Id.* at 551. It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *McClure v. Allied Stores of Tex., Inc.,* 608 S.W.2d 901, 903 (Tex. 1980).

■ Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. *Nixon,* 690 S.W.2d at 550. When the intervening illegal negligent act is foreseeable, it does not negate the continuing proximate causation and consequent liability of the initial actor. *Id.*

■ That Donatto might harm Gobert was foreseeable. The testimony of several witnesses constitutes legally and factually sufficient evidence from which the jury could infer a causal connection between St. Joseph's negligence and Gobert's injuries.

St. Joseph had a rule in place prohibiting male and female patients from entering each other's rooms; it recognized the need to monitor patients to ensure compliance with this rule; and it knew of Gobert's concerns and complaints about Donatto, and Donatto's history and inclinations. Musoke stated that one of the reasons for the rule was to prevent occurrences such as here. St. Joseph should have foreseen that its negligence in preventing the unwanted intrusions of Donatto into Gobert's room might result in some harm to her. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987) (foreseeability does not require that precise manner in which injury will occur be anticipated). St. Joseph's negligence is not excused.

We overrule St. Joseph's second point of error.

■ In her cross-point, Gobert asserts the court erred in granting St. Joseph a directed verdict on her premises liability claim. A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which she relies or of which she complains are shown. *Happy Harbor Methodist Home, Inc. v. Cowins,* 903 S.W.2d 884, 886–87 (Tex.App.—Houston [1st Dist.] 1995, no writ); TEX.R.APP.P. 38.1(h). Where this burden is not carried, the party waives the point of error. *Happy Harbor,* 903 S.W.2d at 886–87. Gobert provides no supporting authority for her contention that the court erred in granting the directed verdict. Gobert's insufficiently briefed cross-point is waived. Therefore, we overrule Gobert's cross-point.

We affirm the judgment.