TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00698-CV






Nucor Steel and Cities of Arlington, et. al./Office of Public Utility Council;


and Public Utility Commission of Texas
, Appellants




v.




Public Utility Commission of Texas and TXU Electric Company/


TXU Electric Company, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-12627, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 This is an appeal from a fuel reconciliation proceeding under the Public Utility
Regulatory Act ("PURA"). (1) See Tex. Util. Code Ann. § 36.203 (West 1998) (hereinafter "PURA
§__"). The district court affirmed in part and reversed and remanded in part an order of the
Public Utility Commission of Texas ("the Commission"). We will reverse in part and render
judgment in accordance with the Commission's order.


STATUTORY OVERVIEW


 Under PURA, a regulated electric utility such as appellee TXU Electric Company
("TXU") (2) may not automatically pass its actual fuel costs through to its customers. See PURA
§ 36.201 (West Supp. 2000). Instead, the Commission designs a rate for the utility that takes into
account projected fuel costs in the form of a fixed "fuel factor"; the Commission periodically
adjusts this factor and reconciles fuel costs the utility charged using the factor against fuel costs
the utility actually incurred. See id. § 36.203 (West 1998).

 Section 36.203, entitled "Fuel Cost Recovery; Adjustment of Fuel Factor,"
provides, "The commission by rule shall provide for the reconciliation of a utility's fuel costs on
a timely basis." Id. § 36.203(e). According to an undisputed conclusion of law, this case was
governed by the pre-1993 version of rule 23.23(b)(2)(H). That rule placed on the utility the
burden of proving that: (1) it generated efficiently; (2) it maintained effective cost controls; and
(3) it negotiated the lowest reasonable fuel cost for its non-affiliated contracts. See 17 Tex. Reg.
7067 (1992), amended, 18 Tex. Reg. 836 (1993). For fuels acquired from affiliated entities, the
utility also carried the burden of establishing that (1) the affiliate's fuel-related expenses were
reasonable and necessary and (2) the affiliate charged the utility no more than it charged others
for items of the same class. See id. The rule disallowed recovery of profit or return on equity
to the affiliate; authorized the Commission to investigate the affiliate's operations; required the
affiliate to maintain specific financial records, which would be available to the Commission; and
disallowed reconciliation of an affiliate's increased fuel cost when the events and conditions that
caused the increased costs were within the utility's control. See id.


PROCEDURAL BACKGROUND (3)


 In December 1995, TXU sought to reconcile its total fuel and purchased power
costs for the period between July 1, 1992 and June 30, 1995. (4) Appellants Nucor Steel ("Nucor"),
the Office of Public Utility Counsel ("OPUC"), (5) and the Cities of Arlington, et al. (6) were among
the entities that intervened in the proceeding. Only two issues from the reconciliation proceeding
are implicated in this appeal: (1) whether TXU should have been allowed to recover fuel expenses
incurred under pre-1983 long-term gas contracts entered into by its affiliate Texas Utilities Fuel
Company (TUFCO) and (2) whether TXU should have been allowed to recover the cost of fuel
used to replace lost capacity resulting from a chimney collapse and nineteen-month outage of
TXU's Monticello Steam Electric Station unit three ("MOSES Three").

 An administrative law judge ("ALJ") at the State Office of Administrative Hearings
conducted a contested case hearing and issued a proposal for decision ("PFD") that recommended
allowing TXU to recover the costs of the replacement fuel for MOSES Three. The ALJ also
recommended disallowing specific, imprudently incurred fuel costs; allowing TXU to recover for
other gas purchased from TUFCO; and concluding that res judicata barred attacks on TUFCO's
pre-1983 long-term gas contracts for alleged conflicts with federal law.

 With respect to the long-term gas contracts, the Commission agreed with the ALJ
and concluded that res judicata barred consideration of whether the contracts conflicted with
federal law. (7) The Commission adopted findings and conclusions disallowing the imprudently
incurred costs and allowing recovery of the remaining amounts paid to TUFCO. But the
Commission disagreed with the ALJ regarding the MOSES Three replacement fuel, finding
instead that "[t]he $66,982,000 in replacement power costs associated with the MOSES Unit No.
3 chimney collapse is not reasonable and should be disallowed."

 TXU, the Cities, and Nucor each filed suit for judicial review of the Commission's
order. See PURA § 15.001 (West 1998); Tex. Gov't Code Ann. § 2001.174 (West 2000). The
district court denied all of the Cities' and Nucor's challenges and affirmed the portion of the order
awarding the costs incurred under the long-term gas contracts. The district court overruled one
of TXU's points of error but sustained the rest and reversed the Commission's order in part,
remanding the cause to the Commission for entry of an order allowing TXU to recover the
additional fuel costs resulting from the chimney collapse. The Commission, the OPUC, (8) the
Cities, and Nucor then filed appeals with this Court.


DISCUSSION


Pre-1983 Gas Contracts

 The Commission found that TXU purchased gas through TUFCO and that
TUFCO's pre-1983 long-term well-head production contracts without market-out provisions (9) were
a factor causing TXU's gas costs during the reconciliation period to exceed the average gas costs
of other investor-owned utilities in Texas. In their first issues, Nucor and the Cities argue that
the Commission erred in allowing TXU to recover costs incurred under these long-term contracts.


Res Judicata

 In its order, the Commission concluded that "[a]ll issues regarding the prudent
negotiation of the contracts executed during a prior reconciliation period should have been
litigated in the fuel proceeding covering that reconciliation period." Nucor and the Cities contend
that the Commission erred in applying the doctrine of res judicata in this situation because fuel
reconciliations are separate proceedings limited to finite periods of time and the result in one
proceeding cannot be res judicata as to another. They further contend that this argument was not
ripe before 1990 and could not have been raised in a previous reconciliation. We disagree.

 The Cities' and Nucor's argument to the Commission is stated in Nucor's brief:


 During the period November 1978 through August 1981, federal law, the
Power Plant and Industrial Fuel Use Act of 1978 (FUA), [Act of November 9,
1978, Pub. L. No. 95-620, 92 Stat. 3289 (since amended),] prohibited the use of
natural gas as a primary fuel in existing electric utility plants on or after January
1, 1990. [See id., § 301, 92 Stat. 3289, 3305 (repealed 1981).] In spite of that
prohibition, during that same period, TUFCO entered into more than 70 long-term
contracts without market-outs with terms extending beyond January 1, 1990. 
Indeed, even before the FUA became law, during the period in which it was under
serious consideration by Congress (April 20, 1977 through November 1978),
TUFCO entered into 26 long-term contracts without market-outs with terms
extending beyond January 1, 1990. Overall, these decisions resulted in around
$208 million of excessive costs that a prudent utility would not have incurred under
the circumstances and that Texas consumers should not be required to bear.



(Footnotes omitted.)

 These same gas contracts were the subject of Docket 9300, in which TXU also
sought to recover expenses incurred thereunder and in which Nucor and the Cities (10) intervened. 
The question of whether TXU was reasonable in entering these contracts was at issue in that
Docket. See Texas Utils. Elec. Co. v. Public Util. Comm'n, 881 S.W.2d 387, 413 (Tex.
App.--Austin 1994), aff'd in part and rev'd in part, 935 S.W.2d 109 (Tex. 1996). Indeed, TXU
raised the Fuel Use Act to explain in part its decision to enter these contracts. See Application
of Texas Utils. Elec. Co. for Auth. to Change Rates, Docket No. 9300, 17 P.U.C. Bull. 2057,
2576 (1991).

 The quoted argument addresses the issue of whether TXU and TUFCO were
imprudent when they entered into twenty-year contracts for gas, expecting that for the last ten
years of the contracts the gas would not have been usable as a boiler fuel. Therefore, this
argument should have been raised in Docket 9300 when TXU first sought to recover expenses
incurred under these contracts. (11) Res judicata prohibits relitigating historical investment facts
such as the prudence of entering a long-term contract. See Coalition of Cities for Affordable Util.
Rates v. Public Util. Comm'n, 798 S.W.2d 560, 565 (Tex. 1990). (12) We overrule appellants' first
issues to the extent they contend that res judicata did not bar consideration of their Fuel Use Act
argument.


Prudence Standard

 Nucor also contends that the Commission erred in applying only a "prudence"
standard because the legislature has mandated that the Commission "disallow those fuel costs that
are 'unreasonable, unnecessary or not in the public interest[.]' Tex. Util. Code § 36.062(4)." 

 Section 36.062 does not by its terms apply to fuel costs. (13) Instead, fuel factors and
reconciliation thereof are controlled by section 36.203, which does not contain the language Nucor
quotes and simply charges the Commission with adopting a rule to govern reconciliation
proceedings. See PURA § 36.203(e). For affiliate purchases, the applicable rule required TXU
to prove that "all fuel-related affiliate expenses [were] reasonable and necessary." 17 Tex. Reg.
7067 (1992), amended, 18 Tex. Reg. 836 (1993). Nucor claims that an affiliate expense may be
prudently incurred but still not be "reasonable and necessary." Thus, Nucor challenges the
Commission's interpretation of this rule.

 We defer to an agency's interpretation of its own regulations unless the agency's
interpretation "is plainly erroneous or inconsistent with the regulation." Public Util. Comm'n v.
Gulf States Utils., 809 S.W.2d 201, 207 (Tex. 1991) (quoting United States v. Larionoff, 431
U.S. 864, 872 (1977)). If the agency interpretation fails to comport with the clear, unambiguous
language of its own regulation, we must reverse its action as arbitrary and capricious. See Sam
Houston Elec. Coop., Inc. v. Public Util. Comm'n, 733 S.W.2d 905, 913 (Tex. App.--Austin
1987, writ denied).

 Based on agency precedent, the Commission defined prudence in conclusion of law
eleven as "the exercise of that judgment and the choosing of one of that select range of options
which a reasonable utility manager would exercise or choose in the same or similar circumstances
given the information or alternatives available at the point in time such judgment is exercised or
option is chosen." (Emphasis added.) Nucor did not challenge this definition. The "prudence"
standard explicitly incorporates a utility's reasonableness and, by speaking in terms of available
alternatives, implicitly recognizes that an expense must be necessary. Because the Commission's
interpretation comports with the clear, unambiguous language of the regulation, we will defer to
the Commission's interpretation of "reasonable and necessary" as being that which is prudent. 
We overrule Nucor's first issue to the extent it contests application of the prudence standard.


Prudence of maintaining relationship with TUFCO

 Nucor also contends that the Commission erred in finding that TXU "was prudent
in maintaining its affiliate relationship with TUFCO." Specifically, Nucor argues that the
Commission ignored the issue of whether TXU prudently managed its relationship with TUFCO. 
Nucor also argues that TXU did nothing to control the prices it paid TUFCO and that TXU could
have escaped liability under the long-term contracts by terminating its relationship with TUFCO
because TXU is not bound by TUFCO's contracts.

 In essence, Nucor argues that the Commission's finding is not supported by
substantial evidence. In a substantial evidence review, we first determine whether the evidence
as a whole is such that reasonable minds could have reached the conclusion the agency must have
reached in order to take the disputed action. See Texas State Bd. of Dental Exam'rs v. Sizemore,
759 S.W.2d 114, 116 (Tex. 1988). The test is not whether the agency made the correct
conclusion but whether some reasonable basis exists in the record to support the agency's action. 
See Texas Health Facilities v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). 
We may not substitute our judgment for that of the agency and may consider only the record on
which the agency based its decision. See Sizemore, 759 S.W.2d at 116. Furthermore, we are
prohibited from substituting our judgment as to the weight of the evidence on questions committed
to agency discretion. See Charter Medical-Dallas, Inc., 665 S.W.2d at 452.

 Nucor's contentions that the Commission ignored the issue of whether TXU
prudently managed its relationship with TUFCO and that TXU failed to take any steps to control
gas costs are unfounded. The Commission found that the relationship between these parties is
defined by the Fuel Trust Agreement and the Gas Supply Agreement, both of which were in
evidence. In addition, the Commission found that TXU has a right to oversee TUFCO and that
TUFCO's officers are responsible to TXU executives. The Commission also found that TUFCO
has formal action plans to monitor and control costs and that it conducts monthly reviews to
identify and remedy cost variances. Finally, the Commission found that TU Services' internal
audit department monitors TUFCO to ensure that effective controls are in place and that TXU
policies are followed as well as to ensure that contract terms are met. The record contains
evidence supporting all of these findings.

 In addition, the record contains substantial evidence that TXU is indeed bound by
TUFCO's contracts with third party suppliers. The Fuel Trust Agreement states that TUFCO is
a wholly owned subsidiary of TXU and was specifically created to supply TXU with fuel. The
agreement further provides that TUFCO acquires fuel "for the use of [TXU]" and that all of
TUFCO's fuel acquisitions are "solely for the benefit of [TXU]." The agreement explicitly
provides that "all rights, titles, and interests held by [TUFCO] in the properties and contracts
identified . . . (as well as any other fuel properties and contractual rights . . . hereafter acquired
by [TUFCO]), are dedicated to, and held for the benefit of, and in trust for, [TXU]." (Emphasis
added.) This agreement gives TUFCO actual authority to acquire fuel for TXU and supports the
Commission's finding that TXU could not escape liability by simply terminating its relationship
with TUFCO. See, e.g., Spring Garden 79U, Inc. v. Stewart Title Co., 874 S.W.2d 945, 948
(Tex. App.--Houston [1st Dist.] 1994, no writ); Currey v. Lone Star Steel Co., 676 S.W.2d 205,
209 (Tex. App.--Fort Worth 1984, no writ) (principal liable for acts of agent for which agent has
actual authority).

 Although Nucor adduced evidence indicating that TXU could have been more
efficient or taken additional steps, that evidence does not alter the conclusion that substantial
evidence supports the Commission's finding. See Star Houston, Inc. v. Texas Dept. of Transp.,
957 S.W.2d 102, 109 (Tex. App.--Austin 1997, pet. denied) (agency alone has power to weigh
evidence and assess credibility of witnesses); Sizemore, 759 S.W.2d at 117 (court may not
supplant agency's assessment of evidence unless reasonable minds could not have reached
agency's conclusion).


Whether TXU/TUFCO prudently managed contracts during reconciliation period

 Finally, Nucor contends that TXU failed to establish that its overall management
of the long-term gas contracts was prudent because TXU adduced no evidence of an overall plan
and because TXU's management was not reasonable under the circumstances.

 The prudence or reasonable and necessary standard does not mandate that TXU and
TUFCO undertake any specific course of action, nor does the test specifically require that a utility
adduce evidence of a long-term plan as Nucor suggests. What is prudent, reasonable, and
necessary depends on circumstances. The prudence standard does not require perfection. The
Commission allowed TXU to recover certain costs but disallowed other costs when the evidence
did not establish TXU's prudence. The fact that TXU adduced evidence that it complied with the
terms of its contracts is some evidence that TXU was reasonable. We overrule the last of Nucor's
arguments under its first issue. Nucor and the Cities' first issues challenging TXU's recovery of
costs incurred under the long-term gas contracts are overruled.


MOSES Three

 The other issue in this appeal concerns whether the Commission erred in
disallowing fuel costs that TXU incurred because of a nineteen-month outage of MOSES Three. 

 TXU burns lignite in the MOSES Three boilers to produce steam-generated
electricity. Part of the exhaust gas created in the generation process is drawn into a flue gas
desulfurization system or scrubber where it is sprayed with limestone slurry to remove sulfur
dioxide. Mist eliminators catch the slurry mist and drop it to the bottom of the scrubber tower. 
However, some slurry remains in the flue gas and leaves the scrubber. When it dries, this
carryover slurry is called "sludge." At MOSES Three, the scrubbed gas passes through a
horizontal bridge or breach duct and enters a chimney where it is vented into the atmosphere.

 Over time, sludge built up along the breach duct and on the chimney wall opposite
and slightly above the breach duct's opening. The sludge build-up on the chimney wall formed
a large, belly-shaped "cyst" that was approximately fifty feet tall and extended two thirds of the
way around the chimney. This cyst was ten to twelve feet deep at its thickest point but thinned
out toward the edges. The mass was located between 100 and 150 feet above ground level. TXU
undertook efforts to remove the build-up, and by November 13, the sludge was only three to six
feet thick. On the evening of November 13, a large portion of the sludge mass broke loose and
fell to the ground. The next day, after crews had been working for approximately half an hour,
another portion of the mass fell away. Shortly thereafter, the remaining mass came loose from
the wall and fell to the ground, compressing the air in the base of the chimney and thrusting the
inner brick liner of the chimney outward; the liner in turn ruptured the chimney's outer concrete
shell. As the outer layer of the chimney collapsed, it toppled to the side and fell on other parts
of the plant causing damage and killing a member of the cleaning crew. The unit was off-line for
nineteen months following the collapse. In order to offset lost generating capacity during this
period, TXU spent $66,982,000 to purchase additional natural gas for use in other facilities. 
TXU sought to recover these replacement costs in the reconciliation.

 The ALJ applied a proximate cause standard and evaluated whether TXU's actions
were the cause in fact of the collapse and whether the collapse was a foreseeable result of TXU's
actions. The ALJ noted the sludge mass "was a cause in fact of the collapse of the MOSES Unit
3 chimney" and that "[i]n retrospect, it is clear that the mass that existed the night before the
chimney collapsed was affected by the prior cleaning in such a manner that it detached and fell
from the liner." Nonetheless, the ALJ concluded that the effect of cleaning efforts on the sludge
mass "was not an obvious condition which made the continued cleaning operations imprudent." 
The ALJ recommended finding that "[t]he accident could not have been anticipated," that TXU's
contractor was prudent in selecting methods to clean the chimney, and that "an engineer
evaluating the potential damage from the entire mass falling to the bottom of the chimney would
. . . not [have anticipated] that there would be major structural damage to the chimney."

 The Commission disagreed with the ALJ's use of the proximate cause standard. 
Instead, the Commission held that agency precedent required a determination of (1) whether TXU
was prudent in its actions and decisions and (2) whether such imprudence, if any, resulted in the
collapse of the MOSES Three chimney. The Commission found that TXU was imprudent and that
the utility's imprudence led to the collapse of the chimney. In the alternative, the Commission
found that even if the collapse did not result from TXU's imprudence, TXU should not be allowed
to recover the replacement fuel costs because the rates paid by TXU's customers during the outage
included a return on the utility's investment in MOSES Three. The Commission reasoned that
TXU customers should not be required to pay for MOSES Three during the time it was not
generating and be required to pay for replacement fuel costs. The Commission decided that either
TXU's imprudence or a balancing of the equities required that TXU's shareholders, rather than
its customers, absorb the replacement fuel costs; it therefore disallowed recovery of the
approximately $67 million expense.

 TXU appealed to the district court on the issues of (1) whether foreseeability was
the appropriate causation standard to be applied to a utility's alleged imprudence; (2) whether
substantial evidence supported the Commission's decision that TXU's imprudence led to the
collapse; and (3) whether the Commission could balance the equities in determining whether to
allow TXU to recover fuel costs. (14) The district court reversed the portion of the Commission's
order disallowing the replacement fuel costs associated with the collapse. The Commission now
appeals contending that: (1) under a balancing of the equities approach, TXU's shareholders
rather than its customers should be required to bear the excess fuel costs incurred; and (2)
substantial evidence supports the Commission's finding that TXU's imprudence led to the MOSES
Three collapse.


Prudence

 In its second issue, the Commission argues that proximate cause is not the proper
standard to apply in determining whether TXU's actions led to the MOSES Three collapse. In
rejecting the ALJ's proposed findings, the Commission rejected application of the principle of
proximate cause--i.e., cause in fact and foreseeability. The Commission contends that this was a
policy choice and that we should review it for an abuse of discretion. See West Tex. Utils. Co.
v. Office of Pub. Util. Counsel, 896 S.W.2d 261, 272 (Tex. App.--Austin 1995, no writ). TXU
responds that the Commission's own prudence standard contains an element of foreseeability. 
TXU's argument is thus a challenge to the Commission's interpretation of its own rules, to which
we defer unless that interpretation is clearly erroneous or inconsistent with the regulation. See
Gulf States Utils., 809 S.W.2d at 207; Sam Houston Elec. Coop., 733 S.W.2d at 913.

 Under either standard of review, we hold that the Commission properly rejected
the proximate cause determination. From a policy standpoint, a fuel reconciliation proceeding
differs greatly from a tort action, and nothing suggests the same law should govern both
proceedings. In a tort action, the plaintiff has the burden of establishing that the defendant had
a duty to the plaintiff, that the defendant failed in its duty by failing to act reasonably under the
circumstances, and that the defendant's failure did in fact cause harm to the plaintiff of a
foreseeable nature. See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.
1990); Sisters of Charity of Incarnate Word, Houston, Tex. v. Gobert, 992 S.W.2d 25, 28 (Tex.
App.--Houston [1st Dist.] 1997, no pet.). The theory is grounded on the principle that a person
should only be held responsible for causing harm of a type that a person of ordinary intelligence
should anticipate. See Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992); Sisters of
Charity, 992 S.W.2d at 30. In a fuel reconciliation proceeding, on the other hand, the utility is
seeking to avoid responsibility for fuel costs and pass them on to consumers, a matter on which
the utility carries the burden. Unlike the plaintiff in a tort case, a utility seeking reconciliation
need not prove that another acted unreasonably but must instead establish that the utility itself
acted reasonably. We uphold the Commission's rejection of the tort law principle on the grounds
that tort law and fuel reconciliations have different histories and purposes.

 We will now examine the prudence standard articulated in the Commission's order
to determine if that standard necessarily implies an element of foreseeability. We reiterate the
three conclusions of law TXU quotes in its brief:


11. Prudence is the exercise of that judgment and the choosing of one of that
select range of options which a reasonable utility manager would exercise or
choose in the same or similar circumstances given the information or
alternatives available at the point in time such judgment is exercised or option
is chosen. [Citations omitted.]


12. There may be more than one prudent option within the range available to a
utility in any given context. Any choice within the select range of reasonable
options is prudent, and the Commission should not substitute its judgment for
that of the utility. The reasonableness of an action or decision must be judged
in light of the circumstances, information, and available options existing at the
time, without benefit of hindsight. [Citations omitted.]


13. The reasonableness of the decision must be determined from an analysis of
options available at the time the decision was made. [Citations omitted.]



 The quoted conclusions require an assessment of the utility's actions and decisions
under the circumstances to determine whether the utility acted prudently. These conclusions do
not state, however, that in the event the Commission finds the utility failed to establish prudence,
the Commission must nonetheless allow the utility to recover its costs unless the Commission
further finds that the costs were a foreseeable result of the imprudence. Neither does rule
23.23(b)(2)(H) contain an element of foreseeability. On the whole, TXU's argument neglects to
take into account who bears the burden in a fuel reconciliation. Neither the rule nor the
Commission's interpretation provides that a utility shall recover fuel costs unless the Commission
proves that the costs were imprudently incurred. Instead, it is the utility that must prove that it
was acting prudently. See 17 Tex. Reg. 7067 (1992), amended, 18 Tex. Reg. 836 (1993). If the
utility fails to carry its burden, it cannot recover its costs. It was TXU's burden to establish that
its actions were prudent. We hold that the Commission did not abuse its discretion by refusing
to assume a burden not given it by rule or Commission precedent. See Pedernales Elec. Coop.,
Inc. v. Public Util. Comm'n, 809 S.W.2d 332, 337 (Tex. App.--Austin 1991, no writ)
(Commission's failure to find in utility's favor despite evidence supporting utility's position
merely meant utility failed to carry burden of proof and was not arbitrary and capricious). We
must now examine the record to see if substantial evidence supports the Commission's finding that
TXU failed to meet the burden of establishing that its actions were prudent.


Substantial Evidence

 The Commission made the following undisputed findings: The sludge mass in the
MOSES Three chimney on October 31, 1993 was of unprecedented size; TXU did not consult a
structural engineer to evaluate "the effect that the existence or falling of the unprecedented sludge
mass could have on the structural integrity of the chimney"; TXU did not perform a risk
assessment or analyze alternatives to standard cleaning procedures; and TXU assigned the clean-up project to an inexperienced supervisor who had never before managed or witnessed a chimney
cleaning operation. All of these findings are supported by the record and support the
Commission's basic premise that TXU was not prudent to proceed with "business as usual" in the
face of such extraordinary circumstances.

 TXU responds that the sludge had been reduced to less-than-unprecedented levels
by the time of the collapse. The utility points to witness testimony indicating that it was not
standard practice to perform a risk assessment and that any such assessment probably would have
failed to predict the unexpected rotation of the sludge mass during its fall or the resulting piston
effect. While the testimony constitutes some evidence that TXU acted prudently, it does not alter
our conclusion that the record contains substantial evidence from which the Commission could fail
to find that TXU established that it was prudent. See Charter Medical-Dallas, Inc., 665 S.W.2d
at 452 (courts may not substitute their judgment as to weight of evidence of questions committed
to agency discretion); Pedernales Elec. Coop., 809 S.W.2d at 337 (Commission's failure to find
in utility's favor supported by substantial evidence despite presence of evidence supporting
utility's position); see also Lewis v. Metropolitan Sav. & Loan Ass'n, 550 S.W.2d 11, 13 (Tex.
1977); Texas Dep't of Pub. Safety v. Latimer, 939 S.W.2d 240, 244 (Tex. App.--Austin 1997, no
writ) (evidence in record may preponderate against agency's decision and nevertheless amount to
substantial evidence). We sustain the Commission's second issue.


Balancing of the Equities

 In its first issue, the Commission contends that under a "reasonable and necessary"
standard, the Commission may disallow fuel costs if it determines after balancing the equities that
it would be more fair to require a utility's shareholders to bear the cost rather than consumers. 
The Commission's order relied on this argument as an alternative reason for disallowing recovery
of the replacement fuel costs. Because we have determined that the Commission was justified in
disallowing these costs based on its finding that TXU failed to establish it acted prudently, we
need not address this issue. See Tex. R. App. P. 47.1.


CONCLUSION


 We reverse that portion of the district court judgment that reversed the
Commission's order disallowing recovery of replacement fuel costs associated with the MOSES
Three collapse and render judgment affirming the Commission's order. We affirm the remainder
of the district court's judgment.



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: August 31, 2000

Publish
1. Tex. Util. Code Ann. § 11.001-64.158 (West 1998 & Supp. 2000).
2. At the time it applied for reconciliation, TXU was known as Texas Utilities Electric
Company.
3. Because review of these issues requires evaluation of whether the record contains substantial
evidence to support the Commission's findings, we will reserve our description of the factual
background pertaining to each issue to its respective portion of the discussion.
4. TXU also sought a special exception to recover otherwise unrecoverable costs. The special
exception is not at issue in this appeal.
5. The Office of Public Utility Counsel is an independent entity charged with representing the
interests of residential and small commercial consumers. See PURA § 13.001 (West 1998). 
6. The intervening and appealing cities are Arlington, Belton, Burkburnett, Cleburne, Grand
Prairie, McKinney, Pantego, Plano, Richardson, Rockwall, Sulphur Springs, and Venus. We will
refer to them collectively as "the Cities."
7. Although the Commission disagreed with a portion of the ALJ's rationale regarding res
judicata and did not adopt all of the ALJ's findings, those differences are not material to this
appeal.
8. The OPUC filed a statement of position in lieu of a brief, supporting the position and
arguments of the brief the Commission filed as appellant.
9. Market-out provisions allow a fuel purchaser to seek a lower price or get out of a contract
in response to differences between the market price and the contract price. 
10. Sulphur Springs was the only one of the Cities that did not intervene in Docket 9300.
11. We disagree with Nucor and the Cities' contention that this argument could not have been
raised until TXU actually purchased gas after January 1, 1990. As noted, if the argument were
correct, the contracts were imprudent from their formation and any expense incurred thereunder
could have been challenged on that basis.
12. The Cities and Nucor do not contend that TXU was imprudent in purchasing gas under
these contracts because the Fuel Use Act currently prohibits them from using the gas. Indeed,
they cannot make such an argument because the "off gas" portion of the Act was repealed over
ten years before this reconciliation period began. See Act of August 13, 1981, Pub. L. No. 97-35, § 1021, 95 Stat. 614.
13. Section 36.062, entitled "Consideration of Certain Expenses," lists certain expenses that
the Commission may not consider for ratemaking purposes. See PURA § 36.062 (West 1998). 
The listed expenses include lobbying expenses, most payments made arising from accidents and
equipment failures occurring at facilities owned by an entity that does not sell power in this state,
and the costs of processing certain refunds or credits. See id. The final subsection provides that
the Commission also cannot consider "any other expenditure, including an executive salary,
advertising expense, legal expense, or civil penalty or fine, the regulatory authority finds to be
unreasonable, unnecessary, or not in the public interest." Id. Fuel costs are not of the same kind
or class as the listed expenses. We therefore disagree with Nucor's assertion that the legislature
intended section 36.062 to apply to fuel costs. See County of Harris v. Eaton, 573 S.W.2d 177,
179 (Tex. 1978); Johnson v. Texas Dep't of Transp., 905 S.W.2d 394, 399 (Tex. App.--Austin
1995, no writ) (under rule of ejusdem generis, courts interpret statute containing illustrative list
to include only items of same kind or class as those expressly mentioned). 
14. Nothing in the record clearly delineates the bases for the district court's decision. The
judgment states that the court sustained TXU's first three points of error and overruled its fourth. 
But TXU's pleading does not contain enumerated points. TXU's motion for rehearing at the
Commission--attached to and referred to by its pleading--does contain enumerated points, but it
contains sixteen of them. The reporter's record indicates that the reporter was dismissed after the
administrative record was filed with the district court but before argument commenced. Because
no party claims that another failed to preserve an argument by presenting it in the district court
and because we review the agency's order rather than the district court's decision, these omissions
do not affect our review. 



CG Times Regular">Publish
1. Tex. Util. Code Ann. § 11.001-64.158 (West 1998 & Supp. 2000).
2. At the time it applied for reconciliation, TXU was known as Texas Utilities Electric
Company.
3. Because review of these issues requires evaluation of whether the record contains substantial
evidence to support the Commission's findings, we will reserve our description of the factual
background pertaining to each issue to its respective portion of the discussion.
4. TXU also sought a special exception to recover otherwise unrecoverable costs. The special
exception is not at issue in this appeal.
5. The Office of Public Utility Counsel is an independent entity charged with representing the
interests of residential and small commercial consumers. See PURA § 13.001 (West 1998). 
6. The intervening and appealing cities are Arlington, Belton, Burkburnett, Cleburne, Grand
Prairie, McKinney, Pantego, Plano, Richardson, Rockwall, Sulphur Springs, and Venus. We will
refer to them collectively as "the Cities."
7. Although the Commission disagreed with a portion of the ALJ's rationale regarding res
judicata and did not adopt all of the ALJ's findings, those differences are not material to this
appeal.
8. The OPUC filed a statement of position in lieu of a brief, supporting the position and
arguments of the brief the Commission filed as appellant.
9. Market-out provisions allow a fuel purchaser to seek a lower price or get out of a contract
in response to differences between the market price and the contract price. 
10. Sulphur Springs was the only one of the Cities that did not intervene in Docket 9300.
11. We disagree with Nucor and the Cities' contention that this argument could not have been
raised until TXU actually purchased gas after January 1, 1990. As noted, if the argument were
correct, the contracts were imprudent from their formation and any expense incurred thereunder
could have been challenged on that basis.
12. The Cities and Nucor do not contend that TXU was imprudent in purchasing gas under
these contracts because the Fuel Use Act currently prohibits them from using the gas. Indeed,
they cannot make such an argument because the "off gas" portion of the Act was repealed over
ten years before this reconciliation period began. See Act of August 13, 1981, Pub. L. No. 97-35, § 1021, 95 Stat. 614.
13. Section 36.062, entitled "Consideration of Certain Expenses," lists certain expenses that
the Commission may not consider for ratemaking purposes. See PURA § 36.062 (West 1998). 
The listed expenses include lobb