**HAKEMY BROTHERS, LTD.; Shair Baz Hakemy; and Mohammad Yousof Hakemy, Appellants**

v.

**STATE BANK AND TRUST COMPANY, DALLAS; Kevin Griffin; Clay V.N. Bright; Christopher R. Bright; J. Jack Hays; David R. Moore; Carol Hunter; and Margaret Vonder Hoya, Appellees.**

No. 05–04–01713–CV.

Court of Appeals of Texas, Dallas.

April 27, 2006.

J. Cary Gray, Looper Reed & McGraw, P.C., Houston, Brent E. Dyer, Looper, Reed & McGraw, P.C., Dallas, for Appellants.

Donald Colleluori, Figari Davenport & Graves, L.L.P., Dallas, Mark C. Clements; Clements, Allen, Woods & Margolis, P.C., Jerry L. Hiersche, Hiersche, Hayward, Drakeley & Urbach, P.C., Addison, for Appellees.

Before Justices WRIGHT, O'NEILL, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Hakemy Brothers, Ltd., Shair Baz Hakemy and Mohammad Yousof Hakemy (the Hakemys) were customers of State Bank and Trust Company, Dallas. They sued the bank, its president David Moore, its vice president Kevin Griffin, and its directors Clay Bright, Christopher Bright, Jack Hays, Carol Hunter, and Margaret Vonder Hoya for damages arising from a transaction with another bank customer, U.S. Stone. The jury awarded the Hakemys $100,000 on their breach of fiduciary duty claim against Griffin but denied them relief on the other claims. The Hakemys argue the trial court erred by denying them leave to amend their petition and that the jury's adverse verdict was against the great weight and preponderance of the evidence. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Shair Hakemy met Griffin when Griffin was a vice president of Liberty National Bank. Griffin handled Shair's deposit accounts and loans. When Griffin left Liberty National Bank for State Bank in 1989, Shair moved his personal and family business loans and deposit accounts to State Bank. Around that same time, U.S. Stone approached Griffin about its plans to acquire and operate a rock quarry and expressed a need for financing for the project. Although the facts were contested, suffice it to say that Griffin told Shair about the project, and the Hakemys ultimately invested in U.S. Stone. Griffin handled several loans from State Bank to U.S. Stone, secured by certificates of deposit and a deed of trust on the quarry pledged by the Hakemys. On January 1, 1999, Griffin left State Bank to become chief financial officer of U.S. Stone. Before Griffin left the bank, U.S. Stone gave

him a royalty interest in U.S. Stone's future quarry operations. The operations did not proceed as planned and, in the fall of 2000, U.S. Stone filed for bankruptcy protection. State Bank's loans to U.S. Stone went into default, and State Bank liquidated the certificates of deposit and foreclosed on the deed of trust.

The Hakemys filed this lawsuit on June 29, 2001, against State Bank, Moore, Griffin, and the bank's directors, asserting claims for fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, violations of the bank holding company act, and violations of the deceptive trade practices act. The Hakemys alleged Griffin approached them about facilitating a $3.2 million loan from State Bank to U.S. Stone in exchange for a royalty interest in the quarry. They alleged Griffin aggressively pursued the Hakemys to obtain their participation and presented financial information and projections to them that he represented had been prepared by State Bank when in reality the information had been prepared by U.S. Stone. The Hakemys alleged Griffin told them if they did not participate in the loan, they should find a new bank. The Hakemys alleged they tried to back out of the deal, but ultimately participated. Griffin structured a package to raise the capital by loaning 150% of the appraised value of two of the Hakemy's real estate holdings. The proceeds from these loans were used to purchase certificates of deposit which, in turn, along with another certificate of deposit owned by the Hakemys, were pledged as collateral against the $3.2 million loan to U.S. Stone. The Hakemys alleged Griffin falsified loan documents to state the loans were for something other than to collateralize the loan to U.S. Stone. They also alleged Griffin did not disclose to State Bank or the Hakemys

that he had been offered a royalty interest in U.S. Stone if he secured the $3.2 million in investments. The Hakemys alleged State Bank and the directors were liable for Griffin's acts under the doctrine of respondeat superior.

The Hakemys nonsuited their claims under the DTPA against all defendants. Prior to trial, the Hakemys twice attempted to amend their petition to add a claim for negligent supervision [1] against State Bank, Moore, and the directors. Moore and the directors were dismissed from the case on summary judgment, and the Hakemys went to trial against State Bank and Griffin.

During trial, the Hakemys sought a trial amendment to add a claim for negligent supervision. The trial court denied the trial amendment, entered judgment in favor of Shair against Griffin in the amount of $100,000 based on the jury's finding of breach of fiduciary duty, and entered judgment for State Bank and Griffin on all of the Hakemys's remaining claims. The Hakemys appeal the judgment, arguing (1) the trial court abused its discretion by denying them leave to file a second amended petition before trial, (2) the trial court abused its discretion by denying them leave to file a trial amendment, and (3) the jury's finding that Griffin did not act in the course and scope of his employment was against the great weight and preponderance of the evidence.

## AMENDED PETITION

In their first and second issues, the Hakemys argue the trial court erred by denying their attempts to amend the petition to allege a claim for negligent supervision against State Bank and the directors

---

1. The Hakemys titled this cause of action as one of "negligence," but the substance of the pleading shows the claim is for negligent supervision.

924

prior to trial and against State Bank during trial.

## Standard of Review and Applicable Law

 Generally, a party may amend its pleadings up until seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX.R. CIV. P. 63. A trial court has no discretion to refuse the amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994); *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *G.R.A.V.I.T.Y. Enters. v. Reece Supply*, 177 S.W.3d 537, 542 (Tex.App.-Dallas 2005, no pet.). The party opposing the amendment generally has the burden to show prejudice or surprise. *Greenhalgh*, 787 S.W.2d at 939. But the trial court may conclude the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Id* at 940; *see Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 665 (Tex.1992); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980); *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex.App.-Dallas 1996, writ denied). In that situation, the opposing party's objection is sufficient to show surprise. *Greenhalgh*, 787 S.W.2d at 940 n. 3.

The deadline for filing an amended petition imposed by rule 63 may be altered by the trial court in a scheduling order issued pursuant to rule 166. TEX.R. CIV. P. 63. A party must seek leave of court to amend its pleadings after the deadline imposed by a scheduling order entered pursuant to rule 166. *Id.* We review a trial court's

enforcement of a scheduling order for an abuse of discretion. *Reece Supply*, 177 S.W.3d at 542. A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles. *Id.* We will not overturn that decision absent a clear abuse of discretion. *Id.*

 Rule of civil procedure 66 governs amendments during trial. TEX.R. CIV. P. 66. It directs that the court shall freely allow an amendment when it subserves the merits of the case and the opposing party fails to show prejudice. *Id.* We review the trial court's decision to deny or allow a trial amendment for an abuse of discretion. *Greenhalgh*, 787 S.W.2d at 941.

## Analysis

### 1. First Attempt to Amend Petition Prior to Trial

 When the Hakemys sought leave to file their second amended petition, the parties were operating under the trial court's third amended scheduling order dated February 12, 2003. That scheduling order was entered pursuant to the parties' joint motion. In that motion, the parties asked that the trial date be reset to September 29, 2003, that amended pleadings be filed by June 30, 2003, and that "[n]o new parties, causes of action or defenses may be added in any amendment or response." The trial court's order adopted the deadlines and language set out in the joint motion.

In June 2003, all of the appellees filed motions for summary judgment. The trial court heard the motions for summary judgment on July 18, 2003, and granted summary judgment, dismissing all of the Hakemys's claims against Moore and the directors, and two of the claims against State Bank with prejudice on July 18 and 21, 2003.

On June 30, the Hakemys filed a motion for leave to file second amended petition.

The amended petition sought to add a new cause of action, negligent supervision, against State Bank, Moore, and the directors. The record does not indicate the Hakemys told the trial court their motion for leave to file an amended petition was pending before the court ruled on the motions for summary judgment. Moore and the Bank filed their objections to the motion for leave to amend on July 29, 2003. On August 1, 2003, approximately two weeks after granting summary judgment to Moore and the directors, the trial court denied the Hakemys's motion for leave to file second amended petition.

We conclude the trial court did not abuse its discretion by denying the Hakemys leave to file their second amended petition. The proposed amendment attempted to add a new claim and violated the court's scheduling order as well as the parties' own agreement that no new causes of action would be filed in any amended pleadings. And Moore and the directors objected to the motion for leave, arguing it was prejudicial and caused surprise. All of the claims against them had been dismissed by summary judgment, and these parties would have had to reenter the litigation to defend against a new cause of action with only twenty-eight days remaining in the discovery period and six months after the deadline for designating expert witnesses. As a result, the trial court could have concluded the new cause of action would have reshaped the litigation, prejudicing the opposing parties and delaying the trial. *Greenhalgh*, 787 S.W.2d at 939–40; *see Kilpatrick*, 874 S.W.2d at 658 (amendment that asserts new cause of action is prejudicial on its face); *Reece Supply*, 177 S.W.3d at 542 (same).

### 2. Second Attempt to Amend Petition Prior to Trial

Five days before the next trial setting, the court granted a joint request for a reset of the trial date. The trial court specially set the trial for June 7, 2004. The trial court did not enter a new scheduling order. One month before trial, on May 7, 2004, the Hakemys filed their second amended petition, again adding a negligent supervision claim and claims for violations of the deceptive trade practices act which the Hakemys had previously nonsuited against all defendants. This time, they did not request leave of court to file the amended petition. Appellees filed motions to strike the second amended petition, arguing (1) more than fifteen months had passed since the deadline for filing amended pleadings, (2) Moore and the directors were dismissed from the case in July 2003, (3) the Hakemys sought leave to file a substantially similar amended pleading one year before and were refused, and (4) the Hakemys did not seek leave of court to file the amended petition. Appellees claimed the amendment would result in unfair surprise and prejudice. The trial court granted the appellees' motions and struck the second amended petition.

We conclude the trial court did not abuse its discretion by striking the Hakemys's second amended petition. The Hakemys did not file this amended petition until one month before trial. Soon after filing the amended petition, the Hakemys provided appellees a supplemental expert report addressing issues raised by the new claim. Although the Hakemys claim that no new proof was required, the fact that the Hakemys delivered a new expert report to appellees suggests that different proof was required for the negligent supervision claim. By then, all discovery deadlines had passed, including the deadline for designating expert witnesses. And appellees had no opportunity, without a continuance, to designate an expert to rebut the Hakemys's expert or conduct additional discovery. This is especially true because many of the parties to the new

claim had been dismissed from the litigation for almost a year. As a result, the trial court could have concluded the new cause of action would have reshaped the litigation, prejudicing the opposing parties and delaying the trial, and did not abuse its discretion by striking the amended petition. *Greenhalgh*, 787 S.W.2d at 939–40; *see Kilpatrick*, 874 S.W.2d at 658; *Reece Supply*, 177 S.W.3d at 542.

We overrule the Hakemys's first issue.

### 3. Attempt to Amend Petition During Trial

■ At the close of the evidence, the Hakemys asked for a trial amendment "to add a negligence claim which is supported by the evidence which has been already admitted in this case relevant to other matters, some of which was objected to and some of which was not." The trial court denied the trial amendment "[f]or the reasons previously given." The Hakemys argue the trial court abused its discretion by not allowing a trial amendment to allege negligent supervision against State Bank.

We conclude the trial court did not abuse its discretion when it denied the trial amendment. *See Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 292–93 (Tex. App.-Beaumont 2005, pet. denied); *Missouri–Kansas–Texas R. Co. v. Alvarez*, 703 S.W.2d 367, 370 (Tex.App.-Austin 1986, writ ref'd n.r.e.). Negligent supervision was a new cause of action; State Bank did not defend the case on a theory of negligent supervision; the trial amendment was proposed at the close of all of the evidence, leaving State Bank no opportunity to present evidence on the issue; and State Bank objected to evidence of negligence when it was offered. We overrule the Hakemys's second issue.

### SUFFICIENCY OF THE EVIDENCE

In their third issue, the Hakemys argue the evidence was factually insufficient to support the jury's finding that Griffin did not act in the course and scope of his employment.

### Standard of Review

When an appellant challenges a jury finding on an issue upon which the appellant had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In reviewing this challenge, we consider all of the evidence in determining whether the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Reece Supply*, 177 S.W.3d at 545. We may reverse and remand for a new trial if we conclude the jury's failure to find is against the great weight and preponderance of the evidence. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988); *Croucher*, 660 S.W.2d at 58.

In making this review, we are not a fact finder and will not pass upon the credibility of the witnesses or substitute our judgment for that of the fact finder, even if a different answer could be reached upon review of the evidence. *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 195 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### Applicable Law

■ For an employer to be liable for an employee's misconduct, the conduct

must have been (1) within the employee's general authority, (2) in furtherance of the employer's business, and (3) for the accomplishment of the objective for which the employee was hired. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002); *Gonzalez v. Ison–Newsome*, 68 S.W.3d 2, 5 (Tex.App.-Dallas 1999, pet. dism'd w.o.j.). However, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Goodman*, 80 S.W.3d at 577.

## Analysis

■■■ The jury found Griffin breached his fiduciary duty to Shair but did not find State Bank vicariously liable for that breach. Jury charge number fifteen asked, "Was Griffin acting within the scope of his employment with respect to the [breach of fiduciary duty]?" The instructions did not define "scope of employment." The jury answered, "No."

The Hakemys argue "[a]ll of the probative evidence on the issue points to the Bank being liable for Griffin's action" because "the overwhelming evidence indicated that Griffin was furthering the Bank's purposes when he got the Hakemys to invest in U.S. Stone." In support of their argument, the Hakemys cite three pages from Griffin's testimony and one page from Moore's testimony, in which Griffin and Moore testify their jobs were to solicit loans and deposits for State Bank. The remainder of the Hakemys's argument on this issue is that State Bank "offered virtually no evidence to dispute the testimony that, by doing the U.S. Stone deal, Griffin was acting in the course and scope of his employment." In their reply brief, the Hakemys argue, "[t]he Bank has pointed to no additional evidence in the record to tip the scales in favor of upholding the jury's verdict on respondeat superior liability."

Appellees argue we should not consider the merits of this argument because the Hakemys's brief contains only three citations to the record, and those citations merely show Griffin's responsibilities at State Bank included generating loans and deposits; the brief does not examine the evidence on both sides of the scope of employment issue; and the brief provides no analysis of how the evidence strongly preponderates against the jury's verdict so as to make it manifestly unjust. On the other hand, appellees argue the Hakemys have not carried their burden to show the jury's verdict is against the great weight and preponderance of the evidence. Appellees argue the jury was justified in rejecting the Hakemys's contention that State Bank should be liable for Griffin's misconduct because the only evidence the Hakemys offered in support of this claim was that Griffin's responsibility included making loans and that State Bank also made loans to U.S. Stone and the Hakemys.

■■■ The focus of the Hakemys's argument is that State Bank has not proven that the evidence supported the jury's finding. But it is not State Bank's burden to show the evidence supported the verdict. It is the Hakemys's burden to show the evidence did not. And a party asserting error on appeal bears the burden of showing the record supports the party's contention by citing specific record references where matters upon which the party relies can be found. *See Sisters of Charity of the Incarnate Word v. Gobert*, 992 S.W.2d 25, 31 (Tex.App.-Houston [1st Dist.] 1997, no pet.). When the party does not carry this burden, the party waives the issue. *Id.*

■■■ To support their burden, the Hakemys isolate four pages from a reporter's record that consisted of nine volumes with over 2100 pages and 340 exhibits. As an appellate court, we are under no duty to

make an independent search of a voluminous record for evidence supporting a party's position. *See* TEX. R. APP. P. 38.1(h); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 237 (Tex.App.-Dallas 2000, pet. denied), *cert. denied*, 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001) (no duty to search voluminous record without guidance from appellant to determine whether assertion of reversible error is valid). Nevertheless, we will attempt to address their argument.

The record references cited by the Hakemys show that it was Griffin's job to solicit loans for the bank in an effort to show Griffin's actions furthered the purposes of State Bank or were for the accomplishment of the objective for which he was hired. They also argue that State Bank's lack of knowledge of Griffin's actions and whether Griffin's actions were authorized were irrelevant to the jury's consideration of the scope of employment question. But the evidence also showed that Griffin received a royalty interest from U.S. Stone in violation of the bank's policies, did not tell Shair about the conflict of interest, and did not tell Shair or State Bank that he intended to leave the bank to take a position as U.S. Stone's chief financial officer. Shair testified Griffin falsified multiple loan documents in order to secure the loans necessary to finance the transaction with U.S. Stone. The Hakemys offered loan documents in evidence that tended to support Shair's testimony.

We conclude the Hakemys did not demonstrate the jury's finding that Griffin was not acting within the scope of his employment was against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

We overrule the Hakemys's third issue.

## CONCLUSION

Having decided all of appellants' issues against them, we affirm the judgment of the trial court.