ACCEPTED
12-15-00197-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/23/2015 1:06:51 PM
Pam Estes
CLERK

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

9/23/2015 1:06:51 PM

PAM ESTES
Clerk

## 12-15-00197-CV

# In the Twelfth Court of Appeals
# Tyler, Texas

Murphy USA Inc., and
Mary Frances Maxwell, Mgr.,

*Appellants,*

v.

Freddie J. Rose and Laureen Irving,

*Appellees,*

## Appellees' Brief

Donovan Paul Dudinsky
701 South Liberty Street
San Augustine, Texas 75972
Telephone: (936) 275-9871
Facsimile: (936) 275-9655
dpauldudinsky@yahoo.com

Counsel For Appellees

## Identity of the Parties

| Appellees: | Counsel |
|---|---|
| Freddie J. Rose<br>Laureen Irving | Donovan Paul Dudinsky<br>701 South Liberty Street<br>San Augustine, Texas 75972<br>Telephone: (936) 275-9871<br>Facsimile: (936) 275-9655<br>dpauldudinsky@yahoo.com |
| Appellants: | Counsel |
| Murphy USA, Inc., and<br>Mary Frances Maxwell, Mgr. | Edward M. Slaughter<br>Brandon W. Maxey<br>Hawkins, Parnell Thackston<br>& Young LLP<br>4514 Cole Avenue, Suite 500<br>Dallas, Texas 75205<br>Telephone (214) 780-5100<br>eslaughter@hptylaw.com<br>bmaxey@hptylaw.com |

# Table of Contents

Identity of the Parties..................................................................................i

Table of Contents......................................................................................ii

Index of Authorities................................................................................iv

Statement of the

Case.................................................................................1

Issue

Presented .................................................................................2

Statement of

Facts...............................................................................2

Summary of the Argument.........................................................................9

Argument and Authorities........................................................................11

    1.    The Texas anti-SLAPP statute does not apply to Appellees'
        claims .............................................................................12

        A.    Standard of Review and Jurisdiction.......................................13

        B.    Communicaions made to law enforcement in reporting
            of a potential crime is not protected under the Texas
            anti-SLAPP statute...................................................13

    2.    Appellees' established prima facie clear and specific evidence
        in their response to Appellants' motion to dismiss in the lower
        court.................................................................17

        A.    Appellees' claim of malicious prosecution sustains

because Appellee Rose has produced prima facie evidence of malice and has materially rebutted Appellants' presumption of probable cause..............................17

    (i)      There is evidence of malice.............................................19

ii

    (ii)     There is evidence to rebut the presumption of probable cause.............................................................20

B.    The evidence is legally and factually sufficient to establish a claim for false arrest.................................................22

C.    Appellees' negligence claim is recognized under Texas Law...........................................................................24

D.    Appellee's claim for defamation should be granted.................31

E.    Appellees produced no evidence regarding Irving's allegation....................................................................35

Prayer...................................................................................................36

Certificate of Compliance......................................................................36

Certificate of Service............................................................................37

iii

# Index of Authorities
## Cases

*Bently,* 94 S.W.3d at 583-584.................................................................................33

*Bossin v. Towber,* 894 S.W.2d 25 ( Tex.App.Houston 14th Dist. 1994),
 writ denied.................................................................................................22

*Charalambopoulos v. Grammer,* 2015 WL 390664 (N.D. Tex. 2015).............15,16

*City of Keller v. Wilson,* 168 S.W.3d. 802,819 (Tex. 2005).................................13

*Clark v. Jenkins,* 248 S.W.3d 418,437 (Tex. App.– Amarillo 2009,
 pet denied __U.S. 130 S. Ct. 52,175 L.Ed. 2d 21 (2009)............................33

*Cohn v. State,* 817 S.W.2d 819 (Tex. Cr. App. 1993)...........................................14

*Crazy Hotel,* 416 S.W.3d at 80-81 (citing *Miranda,* 133 S.W.3d at 227)
 *accord Cheniere Energy,* 449 S.W.3d at 214..............................................12

*Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762,774 (Tex.2010).......................29

*Eans v. Grocery Supply Co.,*
 580 S.W.2d 17, 21-22 (Tex.Civ. App.– Houston [1st Dist.] 1979,
 no
writ)....................................................................................................20

*El Chico Corp v. Poole,* 732 S.W.2d 306,311 (Tex. 1987)...................................*28*

*French v. French,* 385 S.W.3d 61,73
 (Tex. App.–Waco 2012, pet. denied)..........................................................*32*

*Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523,525
 (Tex.1990)...........................................................................................*28*

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,
480 S.W.2d 607, 609 (Tex.1972)..............................................................*25*

iv

*In re Lipsky,* 460 S.W.3d at 596.................................................................*15,32,35*

*Inc. V. Parker*, 249 S.W.3d 392,398 (Tex.2008)...............................................*24*

*Karner v. Stump*, 34 S.W. 656 (Tex.– Civ. App.1896)........................................*23*

*Kroger Tex. Ltd. P'ship v Suberu,*
216 S.W.3d 788, 792 (Tex.2006)......................................................................18

*Lefebvre v. Lefebvre*, 996 P.2d 518 (Or. Ct. App. 2000).......................................16

*Main v. Royall*, 348 S.W.3d 318,390 (Tex. App.– Dallas 2011, no pet.)...............31

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Firlding,*
289 S.W.3d 844, 850 (Tex.2009)......................................................................25

*Martin v. Thomas, 973  F.2d 449, 453-454.  (5ᵗʰ Cir. 1992)*.................................14

*McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903
(Tex. 1980)......................................................................................................29

*Morrill v. Cisek*, 226 S.W.3d 545,549 (Tex.App.– Houston [1ˢᵗ Dist.]
2006, no pet.)...................................................................................................33

*Parker Drilling Co. v. Ramfor Supply Co.*, 316 S.W3d 68, 75
(Tex. App.– Houston [14ᵗʰ Dist.] 2010, pet denied)......................................*25*

*Peshak*, 13 S.W3d at
426...............................................................................................*34*

*Reicheneder v. Skaggs Drug Center*, 421 F.2d 307 (5ᵗʰ Cir. 1970).........................22

*Richey v. Brookshire Grocery Co.,*
952 S.W.2d 515, 517 (Tex.1997)..................................................................18,20

*Richey v. Brookshire Grocery Co.,*
952 S.W.2d 515, 517 (Tex.1997)
(citing *Akin v. Dahl*, 661 S.W. 2d 971)..........................................................19

v.

*Rodriguez-Escobar v. Gross*, 392 S.W.3d 109,113 (Tex. 2013)............................26

*Serafine v. Blunt*, 2015 WL 3941219 (Tex.App.-Austin 2015, no pet.)................*16*

*Sisters of Charity of the Incarnate Word v. Golbert*, 992 S.W.2d 25,28
    (Tex. App–Houston [14th Dist]1997,no pet.)...................................*27*

*Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v.*
    *Matagorda Cnty.*, 52 S.W.3d 128,133 (Tex.2000)........................................25

*Thompson v. Gibson*, 298 S.W.2d 97,105 (Tex. 1957)..............................................*24*

*Thrift v. Hubbard,*
    974 S.W.2d 70, (Tex.App.–San Antonio 1998, pet. denied)...................19,20

*Travis v. City of Mesquite*, 830 S.W.2d 94,98 (Tex.1992).......................................29

*Wal-mart Stores, Inc. v. Lopez*, 93 S,W.3d 548, 557
    (Tex. App.– Houston [14th Dist.] 2002, no pet.)...........................................25

Statutes

Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i-ii).....................................6,8,13,14

Tex. Civ. Prac. & Rem. Code § 27.002...............................................................12,16

Tex. Civ. Prac. & Rem. Code § 27.009(1)(b)..........................................................36

Tex. Civ. Prac. & Rem. Code § 27.010 (b).............................................................12

Tex. Civ. Prac. & Rem. Code § 27.011(a)...............................................................14

vi.

## STATEMENT OF THE CASE

Appellants appeal the trial court's ruling on Appellants' motion to dismiss pursuant the Texas anti-SLAPP statute. (CR 109).

The Appellees (plaintiffs below) contend negligence, false arrest, malicious prosecution, and defamation claims against Appellants (defendants below), Murphy USA and Mary Frances Maxwell, Mgr. (CR 29-32). The Appellee Rose contends that Manager Maxwell negligently breached her duty to inform Appellee Rose (a customer) by not providing him with the check decline codes and toll-free telephone number information issued by "Certegy", being the Appellants' check verification system, information that Appellee Rose was entitled to receive and access so that he could have called "Certegy" technical support and resolve the reason his sufficient checks were declined before Manager Maxwell reported a crime and before she signed a criminal complaint.

On July 10, 2015 a hearing was held in the 123rd Judicial District Court of Shelby County Texas, Center, Texas, whereat said hearing the Presiding Judge Hon. Charles C. Dickerson after reviewing pleadings, exhibits, and hearing oral argument of both parties, determined and ruled that the anti-SLAPP statute did not apply to this case and dismissed Appellants' motion to dismiss.

Appellees respectfully contend their claims are factually and legally supportable.

## ISSUE PRESENTED

The trial court's ruling was a JUST ruling and should be affirmed because:

1.      The Texas anti-SLAPP motion to dismiss statute does not apply to Maxwell's claim of, "Exercise of the right to petition".  Maxwell's actions, conduct and communications fall outside the parameters of the statute and are unconstitutional.

## STATEMENT OF THE FACTS

Appellee Rose was age 72 years at the time of the incident, at which time, he had sufficient funds in two separate checking accounts with Midsouth Bank of Florien, Louisisna.  On the day of the incident, Appellee Rose's bank accounts, of which, one being his personal checking account contained $4,984.16 and the other account being his business checking account  contained $15,253.73 the day before the incident and the day after the incident containing $15,036.73. (CR 91,92)

On August 19, 2014, Appellees arrived at approximately 7:20 am at Murphy USA Inc. located in Center, Texas. Appellees parked their vehicle at pump #6 of Murphy USA, Inc. being situated adjacent to Walmart.

Murphy USA, Inc.'s manager, Mary Frances Maxwell, assisted Appellee Rose without pre-approval and activated pump #6 allowing him to pump gasoline amounting to $83.18 for his vehicle and 4 auxiliary gasoline storage containers.

Appellee Rose then submitted a Walmart credit card and subsequently two

checks drawn on separate checking accounts for payment for gasoline purchase. The Walmart credit card was not approved for payment. Appellee Rose then wrote a check in the amount of $83.18 drawn on his personal checking account containing $4,984.16 and presented payment to manager Maxwell who submitted the check for verification to Murphy USA, Inc.'s check verification service that reads the check writer's bank routing and account number (CR 89). Manager Maxwell manually typed in Appellee's drivers license number typing in the incorrect state of Texas. Manager Maxwell then submitted check #1690 for payment to the check verification service at **07:45:48 a.m.**, this check was declined for payment. Maxwell states, "once the system declines the check," (CR 59 #11) that system, being Certegy.

(Certegy is located in the eastern time zone 1-hour ahead of local time), and check #1690 was declined designated **Final Rcode4 2106D**.

Manager Maxwell then submitted check #1690 a second time with a corrected drivers license state to Certegy check verification service at **07:46:24 a.m.** and check #1690 was declined designated **Final Rcode4 2606D**. Manager Maxwell resubmitted check #1690 a third time to Certegy check verification service at **07:49:35 a.m.** and check #1690 was declined and designated **Final Rcode4 2529D**.

Manager Maxwell requested another form of payment. Appellee Rose

tendered check #2020 payment of $83.18 drawn on his business account containing $15,036.73.

Manager Maxwell handed Appellee Rose his drivers license and he walked to his vehicle.

Manager Maxwell submitted check #2020 to Certegy check verification service at **07:57:34a.m.** and check #2020 was declined and designated **Final Rcode4 2606D.** (CR 101).

Manager Maxwell instructed her cashier known "Angela" to print off a drive-off slip at **07:59:27**. (CR 98). Manager Maxwell called the police at **08:00:00 a.m.** (CR 99). The police arrived at **08:02:00 a.m.** (CR 99). Manager Maxwell was standing in front of Appellee Rose's vehicle when the police arrived. (CR 71).

Manager Maxwell signed a complaint at the incident charging Appellee Rose with Theft.
(CR 90). Appellee Rose was arrested and impound and inventory of his vehicle was completed at **08:10:00 a.m.** (CR 96). Appellee Rose was taken to the Center Police Department Jail for confinement and personal inventory completed at **08:30:00 a.m.** (CR 96).

Certegy provides Murphy USA, Inc. "a toll-free number for a customer to call themselves to find out the reason for the decline and how they can resolve the problem."(CR 89). Appellee Rose was disallowed the toll-free number and

opportunity to resolve the problem before the police arrived and after the police arrived.

The conduct of Murphy USA, Inc. and manager Mary Francis Maxwell should be of grave concern to all citizens and consumers in the State of Texas. Appellees respectfully argue that the Texas State Legislators did not enact the TCPS, Texas anti-SLAPP statute to protect the conduct of a person or corporation in a case of this nature.

Appellee Rose, resident of Florien, Louisiana, was arrested for theft and put in jail for paying with sufficient funds checks that were declined for payment due to Appellants' negligence. Just how often does this happen when a person writes two sufficient checks for payment and then is arrested for theft and put in jail for two days. Appellee Rose had no intention of stealing gasoline from Murphy USA, Inc. located in Center, Texas. Appellee Rose did not leave the premises or even attempt to leave the premises because he was still on the premises when the police arrived to administer the law.

Appellee Rose is innocent of the charge of theft. Rose wrote two sufficient check on two separate accounts with a balance of about $20,000.00.

Appellants however expend effort to favor their so-called protected conduct they claim falls within the TCPS's definition of the "exercise of the right to petition" under Tex. Civ. Prac. & Rem. Code §§ 27.001 (4)(A)(i-ii) and want this

lawsuit dismissed. The trial court disagreed with Appellants' pleadings and argument and denied their motion to dismiss on July 23, 2015.(CR 109).

The record of the check verification time and procedure evidence that Manager Maxwell however trained was negligent in her check verification procedure and she negligently did not and would not provide a customer his rightful entitlement to the decline code information and toll-free telephone contact number to call so that "he" could have resolved the problem.

Appellee Rose was injured with damaging fault. Manager Maxwell breached her duty to a Customer and did not reveal the facts of the check verification procedure to the arresting officer. It was not the police officer that signed the complaint. The County Attorney did not sign the complaint. It was manager Maxwell that pressed the charge of theft against Appellee Rose when and because she signed the complaint that got him arrested.

Now in this Appeal the Appellants' "Statement of Facts" state that the police "had" Manager Maxwell sign a complaint. This statement is "not" in Manager Maxwell's affidavit. There is no mention whatsoever that the police had manager Maxwell sign the complaint in her affidavit presented at the trial court hearing. CR 58, 59).

Appellants' motion to dismiss pursuant "(constitutional right to petition and otherwise participate in government to the maximum extent permitted by law)" never addresses Manager Maxwell's duty as a "trained" manager for Murphy USA, Inc. When the trained manager assisted Appellee Rose by turning on pump #6, the assistance constituted approval by implied agreement. (CR 58, #4). Appellants have added to their statement of the facts that Mr. Rose "**requested** that the pump be turned on **before paying**" which does not appear and was not stated in Maxwell's affidavit and was added to bolster Appellants' version of the events for appeal.

If it may be logically assumed that a manager of Murphy USA, Inc. is trained in procedure and policy governing customer relationship, then it follows that said manager was also trained in Murphy USA, Inc.'s check verification and collection service policy agreement with Certegy. The Certegy web-site makes it specifically clear the merchant's duty to a customer: when a check is declined by a merchant's check verification service, the merchant is required to issue the

customer a decline slip containing a decline code and toll-free number that allows the customer to call the check verification service "Certegy" to find out the reason for the decline and how the problem can be resolved. In addition, Certegy provides merchant employees with a technical support telephone number when questions arise for employees.(CR 89).

Manager Maxwell trained employee did not provide, in any way, Rose with critical information and did not even feel Rose, the customer, warranted her calling Certegy technical support. (CR 89)

Instead, the customer warranted Manager Maxwell calling the police to **administer the law** without all the facts. *See* § 27.001(ii).

The Center Police Dept.'s detailed call report indicates that on 8-19-2014, a 911 call was received from Frances Maxwell at 8:00a.m., call signal: THEFT, at Murphy USA. Police arrived at **8:02 a.m.** (CR 99). Manager Maxwell signed a complaint charging Appellee Rose with the crime of theft. (CR 90). Appellee Rose was arrested on the premises of Murphy USA, Inc.  His vehicle was impounded by **8:10a.m.**(CR 96). His house keeper Laureen Irving told to leave the scene- walk away- in a town not her home town.

## SUMMARY OF THE ARGUMENT

This reply brief presents the Court with an issue that the conduct and actions of Maxwell, in this case should be of grave concern to all citizens and consumers in this state. Rose contends that the Texas State Legislators did not enacted the TCPS, Texas anti-SLAPP motion to dismiss, to protect any conduct by any person or Corporation  in a case such as this one.

In this case, how does a 72 year old man get arrested for theft and put in jail for two days. Rose had no intention of stealing gasoline from Murphy USA, Inc. gas station in Center, Texas.  Rose is innocent, because he wrote two sufficient checks on two accounts with a total of about  $20,000 dollars, the day of the incident. (CR 91-92) Maxwell is a trained Manager for Murphy USA, Inc..  Maxwell is trained in business policy and procedure of the everyday operations of the store.  Maxwell assisted Rose by turning on the gas pump and allowed Rose to pump the gas. (CR 58 #4)  After pumping the gasoline, Rose credit card was declined for payment. Then Rose wrote a sufficient check for payment, Maxwell typed the wrong state code on Rose's driver license. The state code should have been LA. not TX.    (CR 101)  The check was decline due to the drive's license did not match the checking account number in the check verification service data-base system. Rose is in the system data-base. Twenty days prior, Rose's check was approved at Samsclub-Walmart for $818.71, same verification service.  (CR 100) Maxwell states in her

affidavit that, "once the system declines a check". (CR 59 #11)  That system is Certegy check verification service and by policy, once a check is decline, Maxwell should have issued Rose a decline code and toll free phone number to call Certegy to resolve this matter and Maxwell should have called technical support to help correct this issue. (CR 89) Maxwell neglected to do either. The Certegy website clearly states procedure the Merchant owes the customer. *Id*  Instead, Maxwell called 911 at 8:00 am Center Police Department, and signal was theft on the police dispatcher's report.  Law enforcement arrived 8:02.  (CR 99)  Rose was still on the permises when law enforcement arrived.  Rose never attempted to leave as Maxwell's stated.  Maxwell told law enforcement that Rose tried to leave after his checks were declined.  Then Maxwell signed a false complaint, charging Rose with theft without due process,   (CR 90) resulting in the arrest of Rose.  At 8:10 am, Rose's car was impounded and inventoried. (CR 96)

   Rose alleges, due to Maxwell's conduct, and negligence of duty and breach of duty, by not following Certegy check procedure and policy is the cause of the sufficient checks to be declined and not issuing Rose the toll free phone number and decline code to call Certegy.  There was ample time for Maxwell to complete her duty she owed Rose before and after police arrived. Instead, Maxwell filed a signed false complaint, charging Rose with theft was without due process. Maxwell's motion to dismiss is based Chapter 27  of the Practice and Remedies

Code, referred to as Texas anti-SLAPP statute, that communications made to law enforcement to administer the law, and "exercise of the right to petition" to the fullest extent permitted by law. Due to Maxwell's actions and conduct, falls outside the parameters of the anti-SLAPP statutes to administer the law and extent permitted by law. The trial court denied the motion to dismiss and should be upheld.

## ARGUMENT AND AUTHORITIES

The concern in this case is that if a customer writes a sufficient check to a Merchant and that sufficient check is declined due to the negligence of that Merchant. It would then make it possible that the Merchant can call the police and the customer could be arrested if the Merchant signed a complaint charging that person with theft without due process of the law. The Texas legislators did not enact the Texas anti-SLAPP statute to protect the negligence of a Merchant and their legal duty that is owed to the customer.

Maxwell's motion to dismiss is based on communications to law enforcement to administer the law. Rose contends that it was Maxwell's material omissions that lead to a false impression, that did not allow law enforcement to lawfully administer the law and her untruthful statement that Rose was trying to leave without paying. Maxwell's actions and conduct are beyond the "exercise of the right to petition" permitted by law. The trial court's decision should be upheld.

11

**1. The Texas anti-SLAPP statute does not apply to Appellees' claims.**

Appellees respectfully contend they have met their burden with clear and specific evidence of claims according to the Tex. Civ. Prac. & Rem. Code, sections § 27.002 and § 27.010(b).

The Appellants' communication with Appellee Rose, customer, involving Appellant's check verification, withholding check verification information, and reckless disregard of duty to provide Appellee Rose with the check verification information containing decline codes and toll-free telephone number to allow him access to and  opportunity to call the Certegy check verification service to personally resolve a problem is communication.

When reviewing rulings on TCPA dismissal motions, the First Court of Appeals viewed the pleadings and any other "evidence" in the light most favorable to the non-movant.  *See Crazy Hotel,* 416 S.W.3d at 80-81 (citing *Miranda*, 133 S.W.3d at 227) *accord Cheniere Energy*, 449 S.W.3d at 214 ("we are to view the pleadings and evidence in the light most favorable to the non-movant").

**A.     Standard of Review and Jurisdiction**

"The corresponding standards of appellate review give deference to those determinations (especially with regard to the credibility of live witnesses) and presume the fact-finder resolved any evidentiary conflicts in favor of the findings that it either expressly made or that are implicit in its ultimate ruling." *See, e.g.,*

*City of Keller v. Wilson*, 168 S.W.3d. 802,819 (Tex. 2005).

**B.    Communications made to law enforcement in reporting of a potential crime is not protected under the Texas anti-SLAPP statute.**

Maxwell's claim that communications made to law enforcement to report a potential crime are protected under the Texas anti-Slapp motion to dismiss "Exercise of the right to petition"----"communications in or pertaining to"----"a judicial proceeding"----"an official proceeding, other than a judicial proceeding, to administer the law". TEX. CIV. PRAC. & REM. CODE §§ 27.001 (4)(A)(i-ii).

Maxwell owed a duty to Rose (private person), as a merchant. She was negligent in her actions toward Rose. Maxwell's affidavit does not address her duty or the false complaint, only some legal terminology to hide behind about a belief or the attempt of a potential crime. Rose, argue that due to her negligence, and legal duty owed to Rose and her Breach of that Duty (that caused this entire incident to begin with), that her "exercise of the right to petition", does not abrogate or lesson (the common law of negligence). § 27.011 (a). Along with a communication in or pertaining to, an official proceeding, other than a judicial proceeding, to administer the law. § 27.001 (4)(A)(ii). Rose argues that in an official proceeding, if all facts are not communicated to law enforcement, how is law enforcement going to lawfully administer the law. *Id. (ii)* Rose argues, due to Maxwell's own material omissions of the facts that were not communicated to law

13

enforcement (Duty, Breach of Duty), and why the sufficient checks were declined, were not communicated to law enforcement. Maxwell's own ommission's to law enforcement are not Constitutionally protected.

On page 2 of Maxwell's appeal brief state's, Rose requested that the gas pump be turned on before paying. Rose did not request this and this statement is not in Maxwell's affidavit. (CR58-59) It also state that the police had Maxwell sign the complaint. (CR 58-59) Both statements are not true. Maxwell never mentions she signed a complaint in her affidavit. Maxwell is trying to *Bolster* their argument. Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier un-impeached piece of evidence offered by the same party. *see Cohn v. State*, 817 S.W.2d 819 (Tex. Cr. App. 1993).

The TCPA, right to petition, does not abrogate Maxwell's signing a false Complaint, charging Rose with theft without due process of law. *see Martin v. Thomas, 973 F.2d 449, 453-454. ((5th Cir. 1992)* Martin had permission to enter the Gym, therefore the charge of trespass is without due process of law). *i.e.* Rose was allowed to pump the gasoline (CR 58 #4) and paid with sufficient checks, but due to Maxwell's negligence the checks were declined. (CR 59 #5) Therefore her signing a complaint, charging Rose with theft, is without due process of law. The checks were not proven to be insufficient. Rose was innocent of the charge, in which Rose wrote two sufficient checks on two accounts that had a balance of

14

about $20,000. (CR 91-92) Signing a false complaint for theft is not constitutionally protected under the U.S. or Texas constitution. Maxwell's conduct was not an act in furtherance of her constitutional right to petition. Falsely accusing a person of a crime is considered defamation per se. *In re Lipsky,* 460 S.W.3d at 596.

Maxwell, in holding *Charalambopoulos v. Grammer,* 2015 WL 390664 (N.D. Tex. 2015), that the Texas Supreme Court would [likely] find that the statute's definition of the right to petition applies to communications reporting a potential crime—including the filing of a criminal complaint. Maxwell's appeal is holding that communications made to law enforcement to administer the law. Not communications reporting a potential crime and filing a false complaint. No Texas case found that addresses whether statements made to law enforcement when reporting a possible crime qualify under the TCPA as the reporting party's exercise of the right to petition. Maxwell, in holding *Grammer,* is likely but not proven. Therefore *Grammer,* does not apply to this case.

In a recent case, the Texas Court of Appeals, Third District, at Austin stated that the California statutes can sometimes provide guidance regarding comparable TCPA provision. *see Serafine v. Blunt*, 2015 WL 3941219 (Tex.App.-Austin 2015, no pet.)

15

This California case states the act of making a false police report was not an act in furtherance of her constitutional right of petition or free speech, the anti-SLAPP statute simply never comes into play in this case. *see Lefebvre v. Lefebvre*, 996 P.2d 518 (Or. Ct. App. 2000).

TEX. CIV. PRAC. & REM. CODE § 27.002 PURPOSE. " The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuit demonstrable injury".

Maxwell's actions and conduct in this case right to petition, are not permitted by law. Communications made to law enforcement, regards to the Maxwell's appeal were to allow law enforcement to administer the law. The anti-SLAPP statute states only a communication, to administer the law and to the maximum extent permitted by law, is protected under the statute. Maxwell's actions and conduct and false complaint are not protected under the U.S. or Texas constitution and are not permitted by law. Rose argues that the Texas Legislators did not enact or intend for the Texas anti-SLAPP statute to protect conduct as in this case. The trial courts denial of the motion to dismiss should be upheld to protect the rights of a person to file meritorious lawsuit for demonstrable injury.

16

**2.**     **Appellees established prima facie clear and specific evidence in their response to Appellants' motion to dismiss in the lower court.**

Appellees met their required burden of proof on their claims presented in the lower court reflected in the court's determination on Appellees' pleadings and evidence ruled to be factually credible and legally sufficient to deny Appellants' motion to dismiss.

**A.     Appellees' claim of malicious prosecution sustains because Appellee Rose has produced prima facie evidence of malice and has materially rebutted Appellants' presumption of probable cause.**

"Texas courts have recognized a cause of action for those unjustifiably subjected to criminal proceedings, but has made it clear that such cause of action, known as malicious prosecution, must sometimes yield to society's interest in encouraging its citizens to report crimes whether real or merely perceived." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d. 788, 792 (Tex. 2006).

Appellees must prove: (1) criminal proceeding was commenced against the plaintiff; (2) the defendant initiated or procured the proceeding; (3) the proceeding was terminated in plaintiff's favor; (4) the plaintiff was innocent of the crime charged; (5) the defendant lacked probable cause to initiate the criminal proceeding; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *Id.*(citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997).

17

Appellee Rose was arrested and taken to jail in the morning of August 19, 2014.(CR 95, 96). Manager Maxwell signed a complaint on August 19, 2014, charging Appellee Rose with theft. (CR 90). Appellee Rose was called to county court on Cause No.14-34501CR and made his appearance in the Shelby County Court in Center, Texas on November 6, 2014. At court,

Appellee Rose's defense attorney produced evidence of bank statements (CR 91, 92) establishing innocence and terminating the court proceeding in favor of Appellee Rose. The prosecuting County Attorney presented his motion to dismiss to presiding Judge Hon. Rick Campbell who ORDERED, ADJUDGED, and DECREED Cause No.14-34501CR be dismissed.(CR 97).

The probable cause element "asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Id*. *Richey* (citing *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex.1983). Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. *Id*. To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Id*. at 518.

**(i)     There is evidence of malice.**

18

Malice can be established by either direct or circumstantial evidence and may be inferred from a lack of probable cause. *Thrift* v. *Hubbard*, 974 S.W.2d 70, at 80 (1998). The manager's withholding and failure to disclose the available Certegy decline check information to Appellee Rose and the police is relevant to malicious intent of defendant. If a person reports a crime with an improper purpose, or in reckless disregard of the rights of another in a knowing and unreasonable manner, that is malice. *Id*. *Richey*, 952 S.W.2d at 519-20 (holding in malicious prosecution action, failing to fully and fairly disclose all relevant facts or knowingly providing false information to police is relevant to malicious intent of defendant); *Thrift*, 974 S.W.2d at 80 (holding defendant's failure to disclose exculpatory facts was sufficient to demonstrate malice).

A malicious prosecution action against a corporate entity may be based on an agent taking action to procure a prosecution. See *Eans v. Grocery Supply Co.*, 580 S.W.2d 17, 21-22 (Tex. Civ. Appl.– Houston [1st Dist.] 1979, no writ) (malicious prosecution judgment upheld against corporation based on actions of corporate employees).

On the basis of manager Maxwell's conduct and action, Appellee Rose was arrested and taken to jail and spent two days before he posted bond. His vehicle was impounded, his two dogs were impounded, and his housekeeper told to walk

19

away from the scene in a town not being her town of residence. Appellees' claim for malicious prosecution should be upheld as a matter of law.

**(ii)    There is evidence to rebut the presumption of probable cause.**

Manager Maxwell's belief that a crime had been committed was based upon check verification information she received and acted upon that did not constitute probable cause that Appellee Rose had committed theft. When a customer pays with a check, the customer's check is submitted to Certegy Check Verification and Collection Service for its approval or decline.  A personal check #1610 and a business check # 2020 containing substantial account balances (CR 91, 92) were declined. (CR 101). Certegy supplies the Appellants with decline information including a toll-free telephone number for a customer to call and find out the reason for the non-approval and decline and how the customer can resolve the problem. (CR 89).

Appellee Rose is in the Certegy data base as evidenced and pursuant business check # 2009 submitted and accepted twenty days prior in the amount of $818.71 (CR 100) to Samsclub-Walmart who also uses Certegy Check Verification Service.

There is no evidence manager Maxwell had probable cause to initiate a criminal proceeding against Appellee Rose for writing checks on accounts lacking

20

sufficient balances. The Certegy check decline information upon which the manager acted did not support a reasonable belief that Appellee Rose was guilty of theft.

**B.** **The evidence is legally and factually sufficient to establish a claim for false arrest.**

Manager Maxwell instructed her cashier Angela to print a "DRIVE-OFF" record slip at 07:59:27. (CR 98). Appellee Rose had paid for his gasoline purchase with two sufficient checks. (CR 91, 92). The manager standing in front of the vehicle occupied by Appellees parked on the premises called the police at 08:00.00 and the police arrived at 08:02:00. (CR 99).

Arresting officer Walker noted in his police report "Upon arrival the manager Mary Maxwell was standing in front of the car blocking the subjects departure route." (Counsel apologizes to the Court and opposing counsel for the inadvertent omission of the officer's investigation report in the Clerk's record and will supplement the Clerk's record if permitted.)

The manager willfully detained the Appellees without legal authority pointing them out to the police when the police arrived. "A person pointing out another as the perpetrator of a crime and requesting or directing police officers to make an arrest is liable for a subsequent false imprisonment, even though the person acted in good faith. *Reicheneder v. Skaggs Drug Center*, 421 F.2d 307 (5th Cir. 1970).

It has been established that "[a]ny person who directs, requests or participates in a detention is liable for false imprisonment." *Bossin v. Towber*, 894 S.W.2d 25 ( Tex.App.Houston 14th Dist. 1994), writ denied; *Karner v. Stump*, 34 S.W. 656

(Tex.– Civ. App.1896).

The police officer arrived at 08:02:00, the officer met the manager at Appellees' vehicle and right then arrested Appellee Rose his vehicle was impounded and inventoried at 8:10:00.(CR 96).

The manager's signature on complaint (CR 90) requested an arrest despite the manager's knowing the particular circumstances encountered during Appellee Rose's check verification procedure.

The manager did not tell Appellee Rose nor the police officer that a check decline problem was resolvable and could have been addressed with a telephone call to a Certgy check verification representative available to explain and resolve the problem concerning Appellee Rose's checks being declined.

The manager knowingly withheld vital information and assuming Ms. Maxwell is a trained manager in all aspects of management, and assuming by previous years of experience in management and policy (unknown, discovery suspended) receiving checks for payment is routine.

It would follow that a trained manager who knew about and dealt with check verification procedures would have learned that a check declined would not always mean a check is fraudulent.

The manager swore to information inconsistent with the true facts, paragraphs

23

6,7,9 of the manager's sworn affidavit. (CR 58,59).

The officer arrested Appellee Rose when the officer arrived at Appellees' vehicle at 08:02:00, and the vehicle was impounded and then inventoried at 08:10:00.(CR 96). The officer then provided the manager a complaint for the manager to sign. (CR 90).

The trial court's ruling on false arrest should be upheld.

### C.     Appellees' negligence claim is recognized under Texas law.

Negligence is defined as "the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." *See 2081, Inc. V. Parker*, 249 S.W.3d 392,398 (Tex.2008); *Thompson v. Gibson*, 298 S.W.2d 97,105 (Tex. 1957).

Appellee Rose arrived in the morning of August 19, 2014 at Murphy USA, Inc., located in Center, Texas, for the purpose of filling his vehicle with gasoline and filling 4 auxiliary containers with gasoline. Manager Frances Maxwell, on duty at the time, stated in her sworn affidavit "I assisted Mr. Rose by turning on the pump, with the understanding that he would pay before leaving." (CR 58).

Manager Maxwell's assisting Appellee Rose by turning on the pump with the understanding that he would pay before leaving became an implied-in-fact contract

24

establishing a legal duty owed by one person to another. An implied-in-fact contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,480 S.W.2d 607, 609 (Tex.1972); accord *Mann Frankfort Stein & Lipp Advisors, Inc. v. Firlding*,289 S.W.3d 844, 850 (Tex.2009).

A meeting of the minds is an essential element of an implied-in fact contract. *Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128,133 (Tex.2000). The court must look to the conduct of the parties to determine the terms of the contract on which the minds of the parties met. *Parker Drilling Co. v. Ramfor Supply Co.*, 316 S.W3d 68, 75 (Tex. App.– Houston [14th Dist.] 2010, pet denied); *Wal-mart Stores, Inc. v. Lopez*, 93 S,W.3d 548, 557 (Tex. App.– Houston [14th Dist.] 2002, no pet.). The determination of a meeting of the minds is based on what the parties said and did, not on their subjective state of mind. *Id. Parker* at 75.

Elements of a Negligence cause of action are: 1) Duty owed by defendant to plaintiff; 2) Breach of the duty; 3) Proximate cause of the plaintiff's damages by defendant's breach; and 4) Damages. *Rodriguez-Escobar v. Gross*, 392 S.W.3d 109,113 (Tex. 2013).

After fueling his vehicle and filing auxiliary containers, Appellee Rose offered a Walmart Card for payment that was declined. Appellee Rose then paid $83.18 by personal check #1690 drawn on an account containing $4,984.16. (CR 92). The manager negligently typed in the state code of Texas instead of the state code of Louisiana (Appellee Rose is a resident of the state of Louisiana) and the manager then submitted check #1690 to Certegy Check Verification and Collection Service employed by Murphy USA, Inc. for approval. Check #1690 was declined at **7:45:48 final Rcode4 2106D.** Check #1690 was submitted a second time with the proper state code of Louisiana and declined at **7:46:24 final Rcode4 2606D.** Check #1690 was resubmitted a third time and declined at **7:49:35 final Rcode 4 2529D**. (CR 101).

Appellee Rose then paid the $83.18 with business check #2020 drawn on an account that contained $15, 253.73 on 8/18/14 the day before the event and containing $15,036.73 on 8/20/14 the day after the event. (CR 91). The manager submitted check #2020 that was declined at **7:57:34 final Rcode4 2606D.** (CR 101).

Certegy Check Verification Service provides beneficial information to Murphy USA, Inc. that is available to a customer when a check has been declined to be given to a customer who can himself then call a toll-free number and speak with a

Certegy representative to find out the reason for the decline and how they can resolve the problem. (CR 89).

The manager did not give the available Certegy information to Appellee Rose. The agreement initially entered into between manager and customer imposed a duty owed by one person to another. Appellee Rose did not breach his part of the agreement when he intentionally paid for the gasoline purchase with two sufficient checks that he knew were good.

The manager's negligence of typing in the wrong state code when the first check was submitted could have been the beginning red flag for subsequent declines but apparently the manager didn't know. Appellee Rose didn't know because he wasn't given a chance to know. The manager failed to provide Appellee Rose with the Certegy contact information which an ordinarily prudent person in the exercise of ordinary care would have done. *See Sisters of Charity of the Incarnate Word v. Golbert*, 992 S.W.2d 25,28 (Tex. App–Houston [14th Dist]1997,no pet.).

The manager stated in her sworn affidavit paragraph 11, . . ."Once the system declines the check, it can't be overridden by me or another employee."(CR 59). But the system can be over-ridden by the customer if given the chance to do so by himself discussing the check decline problem with the system's technical support representative. (CR 89). Nevertheless, the manager breached her duty to Appellee

27

Rose and called the police and reported a theft. (CR 99). The manager did something an ordinarily prudent person in the exercise of ordinary care would not have done. *Id.*

Duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523,525 (Tex.1990). In determining whether a duty exists, a court is to consider several interrelated factors such as: 1) The risk involved; 2) The foreseeability of the risk; 3) Likelihood of injury; 4) and factors 1-3 weighed against the social utility of the actor's conduct and the magnitude of the burden on the defendant. *Id.* Of all the factors considered foreseeability of the risk is the foremost and dominant consideration. *Id.* (citing *El Chico Corp v. Poole*, 732 S.W.2d 306,311 (Tex. 1987).

Proximate cause is made up of two elements: cause in fact, and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94,98 (Tex.1992). Proximate cause cannot be established by mere conjecture, guess, or speculation. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980). The test for cause in fact is: whether the negligent "act or omission was a substantial factor in bringing about the injury." without which the harm would not have occurred. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762,774 (Tex.2010). Cause in fact is not shown if the Defendant's negligence did no more than furnish a condition which made the

28

injury possible. *Id.* Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Id.* A danger of injury is foreseeable if its "general character might reasonably have been anticipated." *Id.*

The manager assisted Appellee Rose by turning on the pump with the condition that he would pay before leaving. (Cr 58 #4). Upon completion of pumping gas, Appellee Rose payed by check being an approved method of payment by Murphy USA. Inc.'s policy and the check was accepted by the manager. The understanding to pay ties the manager to her accepting a check for payment, and the manager accepting the check ties the manager to the Certegy check verification policy, and Certegy ties the manager to the conditions and the procedure of the Certegy policy. The manager stated a check policy exists: "Once the system declines the check." (CR 59#11).

The condition of Certegy check policy is that the manager follow the procedure correctly. The manager did not follow the check policy correctly because she typed-in the state code incorrectly. Once an error in the Certegy check policy occurs therein lies a REMEDY within the policy that binds the manager to the procedure of the policy. Certegy policy tied the manager to the remedy. But the manager neglected to employ a remedy that states once a check is declined for

29

payment the remedy is to issue and provide the customer with a toll-free number and a decline code so the customer can call Certegy and resolve the problem, and in addition, the Certegy policy offers a toll free technical support number when questions arise. The manager negligently breached her duty to provide Appellee Rose with the Certegy remedy.

The manager who and knowing of the fifteen minutes of ongoing check verification had a duty to reasonably avoid the foreseeable risk of Appellee Rose's arrest. The standard of care is usually to act as a reasonably prudent person would act under the same or similar circumstances exercising ordinary care. The manager did not exercise ordinary care and negligently breached her duty to provide the important Certegy remedy to Appellee Rose before the manager called the police. The manager's failure to provide the Certegy remedy was a substantial factor in bringing about injury and the factual cause and proximate cause of Appellee Rose's damages.

Appellee Rose was arrested and taken to jail where he was confined until a two-thousand dollar bond was posted gaining his release in the evening of August 20, 2014. His vehicle and two pets had been impounded and he had to pay impound fees to secure their release.

The Appellees respectfully contend they have met their burden and the trial

court's ruling should be upheld.

### D. Appellee's claim for defamation should be granted.

Whether a particular statement constitutes a defamation or defamation *per se* depends on the nature of the statement. Texas law presumes that the following statements are defamatory *per se*: (1) statements that unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity, or (2) statements that are falsehoods that injure one in his office, business, profession, or occupation. See *Main v. Royall*, 348 S.W.3d 318,390 (Tex. App.– Dallas 2011, no pet.).

The manager's DRIVE OFF report purporting that Appellee Rose drove away (CR 98) and her call reporting a theft (CR 99) and signing a complaint for theft (CR 90) were defamatory *per se*. Appellee Rose is a private person and must prove that the manager was at least negligent with respect to the truth or falsity of the defamatory statement. *French v. French*, 385 S.W.3d 61,73 (Tex. App.–Waco 2012, pet. denied).

The manager stated in her sworn affidavit that she believed Appellee Rose was leaving the premises without paying for his gas and that he had committed or was attempting to commit a crime. (CR 58 #6). Merely expressing a defamatory statement in a form of an "opinion" does not shield it from tort liability because opinions often imply facts. See *In re Lipsky v.* 460 S.W3d 579 (Tex. 2015) (orig.

31

proceeding). We classify a statement as fact or opinion based on the statements and the entire context in which the statement was made. *Id.*

The manager's belief and statement were falsely misleading because Appellee Rose had not committed nor attempted to commit a crime because he paid for the gasoline he purchased with two sufficient account checks (CR 91, 92) and was still on the premises according to the police report when the police arrived (CR99) and still on the premises when and at the time the manager signed a criminal complaint. (CR 90).

A false statement will typically be classified as defamatory *per se* if it injures a person in his office, profession or occupation. *Morrill v. Cisek*, 226 S.W.3d 545,549 (Tex.App.– Houston [1st Dist.] 2006, no pet.). A communication is considered liable *per se* when it so obviously hurtful to the person aggrieved that no proof of its injurious character is required to make it actionable. *Clark v. Jenkins*, 248 S.W.3d 418,437 (Tex. App.– Amarillo 2009, pet denied __U.S. 130 S. Ct. 52,175 L.Ed. 2d 21 (2009).

A criminal complaint is a communication. The manager adopted the communication when she signed the criminal complaint. The manager's sworn signature on the criminal complaint is an oath no less than the oath she swore when she signed her affidavit. (CR 58-60). The manager signed the criminal complaint

charging Appellee Rose with theft. The manager stated in her affidavit that she reported her "belief that Mr. Rose had committed or was attempting to commit a crime to the police dispatcher, and to the responding police officers." because his Walmart card and two checks were declined. (CR 59). To be actionable as defamation, a statement must be an assertion of verifiable fact, that is, a statement that purports to be verifiable. *Bently,* 94 S.W.3d at 583-584. The manager made statements that were based on incorrect information. The reason

for check decline was verifiable by the manager. The manager did not verify the reason for check decline. The manager stated in her affidavit "In the event a customer's check is declined for payment, it is not the responsibility of a store manager, or any employee, to call a customer's bank. Once the system declines the check, it cannot be overridden by me or another employee." (CR 59, #11). By implication, the manager's statement implies that once a check is declined it becomes the customer's responsibility. The manager with inherent malice would not provide Appellee Rose the Certegy decline information or allow him to call his bank so he could shoulder his own responsibility. Appellee Rose was arrested for theft because of the manager's defamatory statement that his checks were "declined." being verifiable checks of $83.18 drawn on two separate bank accounts located in the same bank totaling an aggregate amount of $20,000.00.

33

(CR 91, 92).

The defendant's intent in making the statements has no bearing on whether they are defamatory. See *Peshak*, 13 S.W3d at 426 (We assume the words were intended because they were used.").( "Common sense requires courts to understand the statement as ordinary men and women would").

The manager's word "belief" used in her affidavit (CR 59 #7) was not based on the outcome of a customers' independent verification with a Certegy representative. The manager's "belief" was not based on the truth or reality of an examination of the Certegy information available to a customer but denied the customer by the manager. A belief is an opinion stronger than impression and less strong than positive knowledge. (Webster's Collegiate Dictionary). The manager's opinion being masked with belief does not shield the manager's fault and defamatory statements from tort liability. *Id. In re Lipsky.*

The manager's statements to the police were defamatory per se and liable per se. Appellees have produced more than a scintilla of evidence that Appellee Rose was not attempting to leave as alleged without paying for his purchase because he paid for his purchase with two separate sufficient checks. Appellee was arrested for theft because the manager signed a complaint that the manager knew the information provided would lead to arrest at the scene though now alleged by

34

affidavit the arrest was left up to the police officer. Appellee's claim for defamation per se and liable per se is not without merit and should be upheld.

### E.     Appellees evidence regarding Irving's allegations.

It is true that Appellee's original and amended petitions did not claim by count separate claims by Appellee Irving. However, it is established under the Fourth Amendment and case law that a passenger has standing to challenge an unreasonable seizure restricting a passenger's freedom.

**Prayer**

The Appellees' respectfully request this Court uphold the trial court's order denying the Appellants' anti-SLAPP motion to dismiss all claims. The Appellees' also request that this case be remanded to the trial court for a determination of attorneys' fees under the anti-SLAPP statue since this motion was filed under this chapter was frivolous and solely intended to delay, the court may award court costs and reasonably attorney's fees to the responding party. *See* Tex. Civ. Prac. & Rem. Code § 27.009(1)(b).

*/s/ Donovan Paul Dudinsky*
Donovan Paul Dudinsky
State Bar No. 24038869
*dpauldudinsky@yahoo.com*
701 South Liberty Street
San Augustine, Texas 75972
Telephone: (936) 275-9871
Facsimile: (936) 275-9655

35

Counsel For Appellees

Certificate of Compliance

I certify that this document contains 7530 words, not counting the sections exempt under Rule of Appellate Procedure 9.4.  The body font is 14pt.

*/s/ Donovan Paul Dudinsky*
Donovan Paul Dudinsky

Certificate of Service

A copy of this Appellees' Brief was sent on this 23rd day of September 2015 to the following counsel via e-mail.

Counsel for Appellants

Brandon W. Maxey
Hawkins Parnell
Thackston & Young LLP
4514 Cole Avenue, Suite 500
Dallas, Texas 75205
e-mail: bmaxey@hptylaw.com

*/s/ Donovan Paul Dudinsky*
Donovan Paul Dudinsky